Dixon Correctional Institute
Keefer Lamar Eaglin 406762
Post Office Box 788
Jackson, LA  70748

Motion to Submit Extra-Length **APPELLATE BRIEF**

**NOW INTO COURT,** comes Pro-Se Petitioner, Keefer Lamar Eaglin, whom

respectfully and humbly request acceptance of Petitioner's Habeas Corpus, which is of

extra-length in nature.  It is Petitioner's opinion, that the entirely of the submitted brief is

proven necessary in providing facts, the actual claims presented, and the substantial merit

to Petitioner's claims.  Petitioner's acknowledges that he is a Pro-Se Defendant, and the

lack of knowledge to most legal terminology, is the cause of the required extra-length

briefing.  Therefore, Petitioner prays that this motion is granted.

Respectfully Submitted By:

Keefer Lamar Eaglin 406762
Dixon Correctional Institute Unit 2 – Dorm 7
Post Office Box 788
Jackson, LA  70748

TENDERED FOR FILING

APR 2 2 2019

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF LOUISIANA

STATE OF LOUISIANA
PARISH OF SAINT TAMMANY
TWENTY-SECOND JUDICIAL DISTRICT

V.                                    DOCKET NUMBER: 519994

KEEFER LAMAR EAGLIN 406762
POST OFFICE BOX 788
JACKSON, LOUISIANA  70748

Petition for Writ of Habeas Corpus

Date: 4 - 18 - 2019                Submitted By: _Keefer L. Eaglin_
                                   Keefer Lamar Eaglin 406762
                                   Dixon Correctional Institute
                                   Post Office Box 788
                                   Jackson, Louisiana  77048

TENDERED FOR FILING

APR 22 2019

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

LAWS AND ARGUMENT

The **Fifth Amendment to the United States constitution** states [n]o person...shall be deprived of life, liberty, or property without due process of law. **U.S. Const., Amend. V;** **see also La. Const. art 1 & 2**. The **Fifth Amendment** is applicable to Louisiana via operation of the **Fourteenth Amendment to the United States Constitution. U.S. Const. Amend. XIV;** see also **Board of Regents v. Roth**, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)

In evaluating due process claims, this court must inquire whether the practice "offends some principal of justice to root in the traditional and conscience of our people as to be ranked as fundamental." **Snyder v. Massachusetts**, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed 2d 674 (1934). A statement by Justice Frankfurter, due process:

> Embodies a system of rights based on moral principles to do
> deeply embedded in the traditions and feelings of our people
> as to be deemed fundamental to a civilized society as conceived
> by our whole history. Due process is that which comports
> with the deepest notion of what is fair, right, and just.

**Solesbee v. Balkcom**, 339 U.S. 9, 16, 70 S.Ct. 457, 461, 94 L. Ed.2d 604 (1950).

The Due Process Clause shall be validated upon actions that "validate those fundamental conceptions of justice which lie at the base of our civil and political institution, and in which define the community's sense of fair play and decency." **United States v. Lovasco**, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed. 2d 752 (1977). The Supreme Court has defined the category of infractions and violates fundamental fairness very narrowly. **Dowling**, 493 U.S. 352-353, 110 S.Ct. at 674. The primary guide in determining whether the principle in question is fundamental is, of course, historical practice, **Montana v. Egelhoff**, 518 U.S. 37, 41-44, 116 S.Ct. 2013, 2017, 135 L.Ed. 2d. 361 (1996).

During the years surrounding the founding of this country, and proceeding to the present day, the idea that one cannot be convicted upon evidence that does not rise to a level beyond reasonable doubt has become enmeshed in the American Judiciary. "[O]ur common-law heritage, our constitution, and our Experience in applying that Constitution

has committed us irrevocably to the position that the criminal trial has one well-defined purpose "to provide a fair and reliable determination of guilt" **Estes v. Texas**, 381 U.S. 532, 565, 85 S.Ct. 1628, 1644, 14 L. Ed. 2d. 543 (1965) (Warren, C.J., with whom Douglass and Goldberg, JJ. joined concerning).

Therefore, considering the violation of the defendant's rights, the convictions, and sentences must be reversed, and a New Trial of Immediate Release be granted.

Index: Volume I

1.) Felony Bill of Information: Parish of Saint Tammany, State of
         Louisiana...................................................................................I

2.) Sentencing Minutes..........................................................................II

3.) Louisiana Supreme Court Ruling To Direct Appeal...............................III

4.) Post - Conviction Application

5.) Memorandum of Law In Support of Post - Conviction Application.....................IV

6.) Procedural History................................................................Pg. # 2-3

7.) Statement of Fact.................................................................Pg. #3-6

8.) Memorandum of Law For Claim #1.......................................Pg. #7-11

9.) Memorandum of Law For Claim #2.......................................Pg. #12-20

10.) Memorandum of Law For Claim #3.......................................Pg. #21-24

11.) Memorandum of Law For Claim #4.......................................Pg. #25-35

12.) Memorandum of Law For Claim #5.......................................Pg. #36-41

13.) Memorandum of Law For Claim #6.......................................Pg. #42-48

14.) Memorandum of Law For Claim #7.......................................Pg. #49-51

15.) Memorandum of Law For Claim #8.......................................Pg. #52-64

16.) Post - Conviction Relief Judgment from District Court

Supplemental Brief

1.) Index................................................................................Pg. ( I )

2.) Supplemental Brief to Claim II...........................................Pg.(s) #1-3

3.) Supplemental Brief to Claim III..........................................Pg.(s) #4-5

4.) Supplemental Brief to Claim IV..........................................Pg.(s) #6-8A

5.) Supplemental Brief to Claim V...........................................Pg.(s) #9-10

6.) Supplemental Brief to Claim VI..........................................Pg.(s) #11-13

7.) Supplemental Brief to Claim VII.........................................Pg.(s) #14-17

8.) Prayer.............................................................................Pg. #18

TABLE OF AUTHORITIES

Miranda v Arizona, 384 U.S. 436 (1966).................................................................Vol. I Pg. #7

Messiah v. U.S., 377 U.S. 210 (1964)...................................................................Vol. I Pg #7

Butler v. McKeller, 494 U.S. 407 (1990).................................Vol. I Pg. #7, Pg. 12-13

Roger v. Richmond, 365 U.S. 534 (1961)...........................................................Vol. I Pg. #12

Ashcraft v. Tennessee, 322 U.S. (1944)...............................................................Vol. I Pg. #12

La Consta. of 1974, Section 18.........................................................................Vol. I Pg. #21

Wiggins v. Smith, 539 U.S. 510 (2003).......................................................Vol. I Pg.(s) #25 &29

Strickland v. Washington, 466 U.S. 688 (1984)..........................................Vol. I Pg. #25

U.S. v. Chronic, 466 U.S. 648 (1984)...........................................................Vol. I Pg.(s) 25 & 32

Smith v. Robbins, 528 U.S. 259 (2000)........................................................Vol. I Pg.(s) #25 & 33

Napue v. Illinois, 360 U.S. 264 (1959)..................................................Vol. I Pg.(s) #36,39,40 & 41

Nix v. Whiteside, 475 U.S. 157 (1986)...........................................................Vol. I Pg. #36

Jackson v. Virginia, 443 U.S. 309 (1979)..................................................Vol. I Pg.(s) #42,49 &52

In re Winship, 397 U.S. 358 (1970)....................................................................Vol. I Pg. #42

State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d.78...........................Vol. I Pg.(s) #49 & 52

State v. Vessell, 450 So 2d 938 (1984)............................................................Vol. I Pg.(s) #49 &52

State v. Mussall, 623 So 2d 938 (1988)............................................................Vol. I Pg.(s) #49 &52

Schlup v. Delo, 513 U.S. 298 (1995)................................................................Vol. I Pg. #52

Boston v. Kentucky.....................................................................................................

SUPREME COURT OF LOUISIANA
WRIT APPLICATION FILING SHEET

NO. _____

## TO BE COMPLETED BY COUNSEL or PRO-SE LITIGANT FILING APPLICATION

TITLE

_____ Keefer Lamar Eaglin· #406762 _____

VS.

_____ State of Louisiana _____

Applicant: Keefer L. Eaglin  406762 _____
 Have there been other filing in this
Court in this matter? __x__ Yes ____ No

Are you seeking a Stay Order? __No__
Priority Treatment? __No__
 If so you MUST complete & attach a Priority
 Form

### LEAD COUNSEL/PRO SE LITIGANT INFORMATION

APPLICANT:

Name: Keefer Lamar Eaglin  406762 _____

Address: Post Office Box 788 _____

_____ Jackson, Louisiana  70748 _____

Phone No. __N/A__ Bar Roll No. ___N/A___

RESPONDENT:

Name: _____

Address: _____

_____

Phone No. _____ Bar Roll No. _____

Pleading being filed: __ In proper person, __x__ In Forma Pauperis

Attach a list of additional counsel/pro se litigant, their addresses, phone numbers and the parties they represent.

### TYPE OF PLEADING

__ Civil, __x__ Criminal, __ R.S. 46:1844 protection, __ Bar, __ Civil Juvenile, __ Criminal Juvenile, __ Other
 __ CINC, __ Termination, __ Surrender, __ Adoption, __ Child Custody

### ADMINISTRATIVE OR MUNICIPAL COURT INFORMATION

Tribunal/Court: _____ Docket No. _____

Judge/Commissioner/Hearing Officer: _____ Ruling Date: _____

### DISTRICT COURT INFORMATION

Parish and Judicial District Court: 22nd Judicial District/St' Tammany ___ Docket Number: 519994 _____

Judge and Section: Scott-Gardner, Section D ___ Date of Ruling/Judgment: November 21, 2013 _____

### APPELLATE COURT INFORMATION

Circuit: First _____ Docket No. 2017-KW-1623 _____ Action: Affirmed / Writ Denied _____

Applicant in Appellate Court: Keefer Lamar Eaglin #406762 _____ Filing Date: November 27, 2017

Ruling Date: February 20, 2018 Panel of Judges: Guidry, Pettigrew, and Crain, JJ. _____ En Banc: __

### REHEARING INFORMATION

Applicant: _____ Date Filed: _____ Action on Rehearing _____

Ruling Date: _____ Panel of Judges: _____ En Banc: __

### PRESENT STATUS

__ Pre-Trial. Hearing/Trial Scheduled date: _____, __ Trial in Progress, __x__ Post Trial

Is there a stay now in effect? __No__ Has this pleading been filed simultaneously in any other court? __No__

If so, explain briefly _____

_____

### VERIFICATION

I certify that the above information and all of the information contained in this application is true and correct to the best of my
knowledge and that all relevant pleadings and rulings, as required by Supreme Court Rule X, are attached to this filing. I further
certify that a copy of this application has been mailed or delivered to the appropriate court of appeal (if required), to the
respondent judge in the case of a remedial writ, and to all other counsel and unrepresented parties.

_____ March 16, 2018 _____
DATE

C/Documents and Setting\Local Setting\Temp\Filing Sheet.wpd

_Keefer L. Eaglin_
SIGNATURE
TENDERED FOR FILING 2002

APR 22 2019 _Dwe_

U.S. DISTRICT COURT
Eastern District of Louisiana



Office Of The Clerk
## Court of Appeal, First Circuit
State of Louisiana
www.la-fcca.org

Rodd Naquin
Clerk of Court

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

### Notice of Judgment and Disposition
February 20, 2018

Docket Number:  2017 - KW - 1623

State Of Louisiana
            versus
Keefer L. Eaglin

TO:   Keefer Lamar Eaglin
      P.O. Box 788
      Jackson, LA 70748

      Warren LeDoux Montgomery
      701 N. Columbia Street
      Covington, LA 70433
      wmontgomery@22da.com

      Hon. Scott Gardner
      701 N. Columbia, Room 312
      Covington, LA 70433

      Melissa R. Henry
      Parish of St. Tammany
      P. O. Box 1090
      Covington, LA 704341090

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

RODD NAQUIN
CLERK OF COURT

IN THE
SUPREME COURT OF LOUISIANA


PARISH OF SAINT TAMMANY
CRIMINAL DOCKET NUMBER: <u>519994</u>

*************************

Honorable Scott Gardner, Judge

KEEFER LAMAR EAGLIN, PRO - SE

VERSUS

STATE OF LOUISIANA


IN RESPONSE TO FIRST CIRCUIT
COURT OF APPEALS

*************************


BEFORE: GUIDRY, PETTIGREW, and  CRAIN, JJ.



Respectfully Submitted By:
Dixon Correctional Institute

Keefer Lamar Eaglin 406762
Post Office Box 788
Jackson, Louisiana 70748

VOLUME I

JAIL

FELONY BILL OF INFORMATION

STATE OF LOUISIANA - PARISH OF ST. TAMMANY

TWENTY-SECOND JUDICIAL DISTRICT

FILED
ST. TAMMANY PARISH
MALISE PRIETO
CLERK OF COURT

5 1 9 9 9 4  MY -3 12

TO THE HONORABLE, THE TWENTY-SECOND JUDICIAL DISTRICT COURT OF LOUISIANA, sitting in for the Parish of St. Tammany, comes now into open Court the undersigned District Attorney of the Twenty-Second Judicial District of Louisiana, in the name and by the authority of said State, informs the said Honorable Court;

That the person(s) named and identified below, late of the Parish of St. Tammany on or about the date below described, in the Parish of St. Tammany aforesaid and within the jurisdiction of the Twenty-Second Judicial District in and for the Parish of St. Tammany, State of Louisiana and contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same did violate:

DEFENDANTS NAME AND DATE OF BIRTH:

1) KEEFER LAMAR EAGLIN   DOB: 10/12/1979   SSN: 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   Arrest Date: 01/17/2012   SID#: 1744151
   1326 HICKORY ST, SLIDELL, LA. 70460-

DATE OF OFFENSE:       January 16, 2012

COUNT 1
R.S. 14:42.1 FORCIBLE RAPE, by having sexual intercourse with CB  DOB: 9-7-1998, without the lawful consent of the victim and being prevented from resisting the act by force or by threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.

WALTER P. REED
DISTRICT ATTORNEY
22nd JUDICIAL DISTRICT
STATE OF LOUISIANA

BY: _____

Div. E

SCANNED

APR 22 2014

SCANNED

MAY 1 1 2012

S5. CERTIFIED COPY OF THE TRANSCRIPT 5/19/2009 IN #443438

The State tendered the matter to the Court.

Argument was heard on behalf of the Defense as to S2 and its relation to the Motion to Quash. Argument was heard on behalf of the State and the matter was submitted to the Court. Court denied said motion as it relates to S3 and granted said motion as to S2. Defense Counsel objected and Court noted said objection.

The Court having reviewed all the evidence submitted in this hearing, Court found that less than ten years has elapsed between the expiration of the defendant's supervision by the Department of Corrections and the commission of this offense, that the defendant was adequately advised of his rights during the previous convictions, and the defendant is one and the same as was previously convicted as alleged in the multiple offender bill. Court adjudicated the defendant to be a second felony offender. Argument was heard on behalf of the State and the State informed the Court the victim does not wish to make a statement. Under the provisions of Article 14:42.1, Article 894.1 and Article 15:529.1, Court sentenced the defendant to serve a period of eighty (80) years at hard labor without benefit of probation, parole or suspension of sentence with the Department of Public Safety and Corrections of the State of Louisiana. Further, Court ordered the defendant to register as a sex offender for a period of life. Court ordered the defendant be given credit for time served.

Defense Counsel requested leave of the Court to file a Motion to Reconsider and a Motion for Appeal.

Court informed Counsel written reasons will be filed.

COURT ADJOURNED SINE DIE:                MINUTES READ AND APPROVED:

_____          _____

MINUTE CLERK   Heather O'Neill            JUDGE    DIVISION G    SG

42

# The Supreme Court of the State of Louisiana

STATE EX REL. KEEFER LAMAR EAGLIN

NO.   2015-KH-1074

VS.

STATE OF LOUISIANA

— — — — —

IN RE:  Keefer Lamar Eaglin; - Plaintiff; Applying For Writ of
Certiorari and/or Review, Parish of St. Tammany,  22nd Judicial
District Court Div. G, No. 519994; to the Court of Appeal, First
Circuit, No. 2014 KA 1729;

— — — — —

April 15, 2016

Denied.

JDH

BJJ

JTK

JLW

GGG

MRC

CRICHTON, J.,  would grant and docket.

Supreme Court of Louisiana
April 15, 2016

Katie Naranovic

**Second Deputy**       Clerk of Court
                        For the Court

APPENDIX "A" -- UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

## UNIFORM APPLICATION FOR POST-CONVICTION RELIEF

Keefer Lamar Eaglin                        No. _____
NAME OF PETITIONER                         (to be filled in by the clerk)

406762                                     __22nd__ JUDICIAL DISTRICT
PRISON NUMBER
Elayn Hunt Correctional Center    PARISH OF _Saint Tammany_____

PLACE OF CONFINEMENT         STATE OF LOUISIANA

vs.
Warren Montgomery
CUSTODIAN (Warden, Superintendent, Jailor,
   or authorized person having custody of
   petitioner)
   Please Serve CUSTODIAN and _x_, DISTRICT ATTORNEY, _22nd_ JUDICIAL DISTRICT, STATE OF
LOUISIANA.

### INSTRUCTIONS--READ CAREFULLY

(1) This petition must be legibly written or typed, signed by the petitioner and sworn to before a notary public or institutional officer authorized to administer an oath. Any false statement of a material fact may serve as the basis for a criminal prosecution. All questions must be answered concisely in the proper space on the form. Additional pages are not permitted except with respect to the facts which you rely upon to support your claims for relief. No citation of authorities or legal arguments are necessary.

(2) Only one judgment may be challenged in a single petition except that convictions on multiple counts of a single indictment or information may be challenged in one petition.

(3) YOU MUST INCLUDE ALL CLAIMS FOR RELIEF AND ALL FACTS SUPPORTING SUCH CLAIMS IN THE PETITION.

(4) When the petition is completed, the original must be mailed to the clerk of the district court in the parish where you were convicted and sentenced.

(5) You must attach official documentation showing your sentence and the crime for which you have been convicted. You may obtain that documentation from the clerk of court of the district court of the parish where you were sentenced or from the institution where you are confined. If that documentation is not attached, you must allege what steps were taken to obtain it.

(6) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

## PETITION

1. Name and location of court which entered the judgment of conviction challenged

    22nd JDC, P.O. Box 1090, Covington, La. 70434

2. Date of judgment of conviction   November 21, 2013

3. Length of sentence   Eighty (80) Years

4. Nature of offense involved (all counts)   Forcible Rape

5. What was your plea?  (check one)

    (a) Not guilty (X)

    (b) Guilty ( )

    (c) Not guilty and not guilty by reason of insanity ( )

If you entered a guilty plea to one or more counts and not guilty to other counts, give details

    (d) Name and address of the lawyer representing you at your plea (if you had no lawyer, please

    indicate)

    Oliver Carriere, 402 N. Jefferson St., Covington, La. 70434

    (e) Was the lawyer appointed (X) or hired ( )? (check one)

6. Kind of trial:  (check one)

    (a) Jury (X)

    (b) Judge only ( )

7. (a) Name and address of the lawyer representing you at your trial:

    Oliver Carriere, 402 N. Jefferson St., Covington, La. 70434

    (b) Was the lawyer appointed (X) or hired ( )? (check one)

8. Did you testify at the trial?   Yes ( ) No (X)

9. (a) Give the name and address of the lawyer who represented you at sentencing for the conviction being

attacked herein.  Oliver Carriere, 402 N. Jefferson St., Covington, La. 70434

    (b) Was the lawyer appointed (X) or hired ( )? (check one)

10. Did you appeal from the judgment of conviction?   Yes (X) No ( )

11. If you did appeal, give the following information:

    (a) Citation, docket number, and date of written opinion by the Supreme Court (if known)

    #2014 - KA - 1729

    (b) Name and address of lawyer representing you on appeal:

Katherine M. Frank, P.O. Box 1677, Abita Springs, La. 70420

(c) Was the lawyer appointed (X) or hired ( )?  (check one)

12. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any application for post-conviction relief with respect to this judgment in any state or federal court?   Yes ( ) No (X)

13. If your answer to 12 is "yes", give the following information:

(a)(1) Name of court _____

(2) Nature of proceeding _____

(3) Claims raised _____

(4) Did you receive an evidentiary hearing on your application?   Yes ( ) No ( )

(5) Was relief granted or denied? _____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you [if none, so state]:

_____

(9) Was the lawyer appointed ( ) or hired ( )?  (check one)

(b) As to any second application give the same information:

(1) Name of court _____

(2) Nature of proceeding _____

(3) Claims raised _____

(4) Did you receive an evidentiary hearing on your application?

Yes ( ) No ( )

(5) Was relief granted or denied? _____

(6) Date of disposition _____

(7) Citation of opinion (if known) _____

(8) Name and address of lawyer representing you [if none, so state]:

_____

(9) Was the lawyer appointed ( ) or hired ( )?  (check one)

(c) Have you filed any other applications for post-conviction relief with respect to the challenged conviction?   Yes ( ) No ( )

If "yes", set forth the details (as above) on separate paper and attach.

(d) Did you appeal or seek writs of review from the denial of any post-conviction application?

(1) First petition, etc.  Yes ( ) No ( )

(2) Second petition, etc.  Yes ( ) No ( )

(e) If you did not appeal or seek writs from the denial of any post-conviction application, explain briefly

why you did not:

_____

(f) Name of the lawyer who represented you on appeal from the denial of any post-conviction application

[if none, so state]:

(1) First petition _____

(2) Second petition _____

## CLAIMS FOR RELIEF

State concisely facts supporting your claim that you are being held unlawfully.  If necessary, you may attach extra pages stating additional claims and supporting facts.  Do not argue points of law.

The following is a list of those claims, and only those claims, that may provide you with grounds for relief:

(1) Your conviction was obtained in violation of the constitution of the United States or the State of Louisiana;

(2) The court exceeded its jurisdiction;

(3) Your conviction or sentence subjected you to double jeopardy;

(4) The limitations on prosecution had expired;

(5) The statute creating the offense for which you were convicted and sentenced is unconstitutional;

(6) The conviction or sentence constitute the ex post facto application of law in violation of the Constitution of the United States or the State of Louisiana.

A REMINDER: THE ABOVE LIST CONTAINS ONLY THOSE CLAIMS THAT YOU MAY RAISE FOR RELIEF.  YOU MUST SET FORTH ALL OF YOUR COMPLAINTS ABOUT YOUR CONVICTION IN THIS APPLICATION.  YOU MAY BE BARRED FROM PRESENTING ADDITIONAL CLAIMS AT A LATER DATE.  Remember that you must state the FACTS upon which your complaints about your conviction are based.  MERE CONCLUSORY ALLEGATIONS WILL NOT SUFFICE.

## REPETITIVE APPLICATIONS

The above claims may not provide grounds for relief if any of the following applies to you:

(1) Unless required in the interest of justice, any claim for relief which you fully litigated in an appeal shall not be considered.

(2) Any claim of which you had knowledge and inexcusably failed to raise in the proceeding leading to conviction may be denied by the court.

(3) Any claim which you raised in the trial court and inexcusably failed to pursue on appeal may be denied by the court.

(4) A successive application may be dismissed if it fails to raise a new or different claim.

(5) A successive application may be dismissed if it raises a new or different claim that was inexcusably

omitted from a prior application.

This application will provide space for you to explain the reasons why you failed to raise your claims in the proceedings leading to conviction, or failed to urge the claim on appeal, or failed to include the claim in a prior application.

## CLAIM I

Claim:
Petitioner was denied Fifth Amendment Constitutional Rights

(a) Supporting FACTS (tell your story briefly without citing cases or law):
Petitioner submits documentation contradicting trial testimony

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: Petitioner cannot. Evidence provided in submitted documentation. Please see Memorandum of Law Claim #1

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: Ground not raised in trial due to denial of Petitioner's Motion to enroll as Co-Counsel

## CLAIM II

Claim:
Petitioner was denied Fifth and Fourteenth Amendment Constitutional Rights, Coerced Confession

(a) Supporting FACTS (tell your story briefly without citing cases or law):
Please see Memorandum 1f Law Claim #2

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:
Petitioner cannot. Support of claim provided with Memorandum

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: Ground not raised in trial due to denial of Petitioner's motion to enroll as Co-Counsel

## CLAIM III

Claim:
Petitioner was denied his constitutional rights, as it pertains to the Eighth Amendment of the United States Constitution

(a) Supporting FACTS (tell your story briefly without citing cases or law):
Please see Memorandum of Law Claim #3

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why: Petitioner offers Oliver Carrier and Amanda Trosclaie, of the Public Defender's Office - 402 N. Jefferson St. Covington, La. 70434

(c) If you failed to raise this ground in the trial court prior to conviction, on appeal or in a prior application, explain why: Ground not raised in trial due to denial of Petitioner's Motion to enroll as Co-Counsel

You may attach additional pages setting forth the required information (above) if additional claims are asserted.

A. Do you have in a state or federal court any petition or appeal now pending as to the judgment challenged?

Yes [ ] No [x] If "yes", name the court

_____

B. Do you have any future sentence to serve after you complete the sentence imposed by the judgment

## CLAIM IV

Claim:

Insufficient Assistance of Counsel.

(a) Supporting Facts (tell your story briefly without citing cases or law):
Please refer to attached Memorandum of Law.

(b) List names and address of witnesses who could testify in support of your claim. If you cannot do to explain why:
Petitioner cannot. No eye witnesses to the claim.

(c) If you failed to raise this ground in the court prior to conviction, explain why:
Public Defender's Office Failed to present the evidence. Petitioner filed Motion to Enroll as Co-Counsel, in an effort to present the evidence, but motion was denied by the court.

## CLAIM V

Claim:

Conviction obtained by use of perjured testimony.

(a) Supporting Facts (tell your story briefly without citing cases or law):
Please refer to attached Memorandum of Law.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:
Petitioner cannot. No eye witnesses to the claim.

(c) If you failed to raise this ground in the court prior to conviction, on appeal, or in a prior application, explain why:
Public Defender's Office failed to present the evidence. Petitioner filed Motion to Enroll as Co-Counsel in effort to present the evidence, but motion was denied by the court.

## CLAIM VI

Claim:

Insufficient Evidence

(a) Supporting Facts (tell your story briefly without citing cases or law):
Please refer to attached Memorandum of Law.

(b) List names and addresses of witnesses who could testify in support of your claim. If you cannot do so, explain why:
Petitioner cannot. No eye witnesses to the claim.

(c) If you failed to raise this ground in the court prior to conviction, on appeal, or in a prior application, explain why:
Public Defender's Office failed to present the evidence. Petitioner filed Motion to Enroll as Co-Counsel in effort to present the evidence, but motion was denied by the court.

## CLAIM VII

Claim:
Petitioner challenges the integrity of the Bill of Information and the credibility of the

District Attorney's Office _____

_____

(a) Supporting Facts (tell your story briefly without citing cases or law):
Please refer to attached Memorandum of Law. _____

(b) List names and addresses of witnesses who could testify in support of your claim. If you
cannot do so, explain why:
Petitioner cannot. No eye witnesses to the claim. _____

(c) If you failed to raise this ground in the court prior to conviction, on appeal, or in a prior
application, explain why:
Investigation was still being conducted on the Head of the District Attorney's Office, which
concluded with multiple felony convictions of Walter P. Reed, for whom's signature appears
on Petitioner's Bill of Information. _____

## CLAIM VIII

Claim:
Actual Innocence _____

_____

a) Supporting Facts (tell your story briefly without citing cases or law):
Please refer to attached Memorandum of Law. _____

(b) List names and addresses of witnesses who could testify in support of your claim. If you
cannot do so, explain why:
Gwen Walker 336 Gwen Street Slidell, Louisiana 70458 _____

(c) If you failed to raise this ground in the court prior to conviction, on appeal, or in a prior
application, explain why:
Public Defender's Office failed to present exculpatory evidence favorable to Petitioner's
claim. Petitioner submitted a Motion to Enroll as Co-Counsel in an effort to present
exculpatory evidence before the court, but Petitioner's motion was denied by the court. ____

Challenged?  Yes [ ] No [X]

    (1) If so, give name and location of court which imposed sentence to be served in the future:

_____

    (2) Give date and length of sentence to be served in the future:

_____

    (3) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?  Yes [ ] No [ ]

  C.  If a copy of the court order sentencing you to custody is not attached, explain why.

_____

    WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled.

_Keefer L. Eaglin_
Signature of Petitioner

17  March  2017
Day/Month/Year

### APPLICATION FOR APPOINTMENT OF COUNSEL

I am unable to employ counsel to represent me in this matter because I have no assets or funds except:

**None**
_____

(Write "None" above if you have nothing; otherwise, list your assets including funds in prison accounts.)

_Keefer L. Eaglin_
Signature of Petitioner

### AFFIDAVIT

STATE OF LOUISIANA

PARISH OF  Iberville

  Keefer Lamar Eaglin_____, being first duly sworn says that he has read the
(Name of Petitioner)
foregoing application for post-conviction relief and swears or affirms that all of the information therein is true and correct.  He further swears or affirms that he is unable to employ counsel because he has no assets or funds which could be used to hire an attorney except as listed above. [Delete reference to appointment of counsel if applicable.]

_Keefer L. Eaglin_
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this _17_ day of _March_, 20_17_.

_Colby Bullet_ ex-officio # 142539
Notary Public or other person authorize to administer an oath.

IN THE
TWENTY-SECOND JUDICIAL COURT
PARISH OF SAINT TAMMANY
STATE OF LOUISIANA

STATE EX REL.  KEEFER LAMAR EAGLIN          DOCKET NUMBER:  519994
VERSUS                                      DATE FILED:_____
STATE OF LOUISIANA
                                            _____
                                            CLERK OF COURT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
FOR POST-CONVICTION RELIEF
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MAY IT PLEASE THE COURT:

Now into Court, comes Pro-Se Petitioner, Keefer Lamar Eaglin, who

respectfully submits this memorandum of law in support of application for post-

conviction for newly introduced evidence for reason to wit:


As a matter of introduction, Petitioner respectfully submits that the events

which transpired within the instant case constituted a denial and violation of

Petitioner's rights to due process of law and equal protection, guaranteed by the

Fifth, Sixth, Eighth, and Fourteen Amendments to the United States Constitution.

These errors were not merely procedural, but substantially infringed upon the

Petitioner's constitutional rights to due process of law.  At the minium, Petitioner

request that a hearing be held on this issue.


## JURISDICTION AND STATUTORY PROVISION

Jurisdiction vest within this Court pursuant to Louisiana Constitutional

Article 924 et seg., which states pertinently that, "an application for post-

conviction shall not be entertained if the petitioner may appeal the conviction and

sentence for which he seeks to challenge, or if appeal is pending.

PAGE #1

## PROCEDURAL HISTORY

On the 17th day of January 2012, Petitioner was arrested by the Saint Tammany Parish Sheriff's Department, and charged with the crime of Forcible Rape. On the 18th day of January 2012, a bond was set in the amount of one-hundred thousand (100,000) dollars. Petitioner immediately submitted a Motion for Bond Reduction into the Saint Tammany Parish court, which was received and filed on the 27th day of January 2012. Petitioner sat in jail, writing often to ascertain his status, until the State eventually decided to file a "Bill of Information" on May 3, 2012, charging Petitioner with the crime of Forcible Rape against C. Ben (R.p. 49 of trial transcripts.) Petitioner had not been arraigned at any time before the "bill of Information" had been filed.

On July 2, 2012 Petitioner submitted a Pro-Se Motion Pursuant to Article 701 (b) (2) of Louisiana Code of Criminal Procedure and Application for Writ of Habeas Corpus, which was received and filed by the Saint Tammany Parish Clerk of Court on the 28th day of November 2012. After being continued on several court appointed dates, approximately three-hundred and forty (340) days, Petitioner submitted a Writ of Mandamus before the First Circuit Court of Appeals, requesting that judgment be passed down to the district court, ordering them to conduct a Preliminary Examination on behalf of Petitioner. The First Circuit Court of Appeals granted Petitioner's request , and a Preliminary Examination was eventually conducted on the 15th day of November 2013. (one day before trial proceedings.)

Subsequently, Petitioner went to trial on November 18, 2013. On the 21th day of November 2013, Petitioner was found guilty as charged within the Bill

Page #2

of Information.

Prior to sentencing, the State charged that Petitioner was a third (3rd) felony offender. Defense Counsel filed a Motion to Quash the Multiple Offender Bill. (R.p. 153 of trial transcripts.) The Honorable Judge Scott Gardner affirmed that Petitioner was a third (3rd) felony offender, and Petitioner was sentence to serve a term of eighty (80) years imprisonment at hard labor without the benefit of parole. Defense Counsel submitted a Motion for Reconsideration of Sentence and Post Trial Judgment, but both motions were denied by the courts. (R.pp. 161 - 164 of trial transcripts.)

### STATEMENT OF FACTS (AS KNOWN TO THE COURT)

Petitioner began an online chat with C. Ben, whom initially represented herself to be a nineteen (19) year old female. The online conversation went on for several weeks before Petitioner and C. Ben exchange photographs, telephone numbers, and then arranged a meeting in person. On the morning of January 16, 2012, the Martin Luther King Holiday, C. Ben was out of school. Despite her mother's intent that the two of them spend the holiday together, C. Ben had made her own plans to travel to Petitioner's residence. (R.p 498 of trial transcripts.) In fact, C. Ben had even packed a bag of clothing for her to depart with. (R.p. 689 of trial transcripts.) Within trial proceedings, C. Ben's mother, Edna Ben, testified that on the morning of January 16, 2012, C. Ben had entered her bedroom insisting that she retrieve a slice of gum from her mother's purse. C. Ben then exited the room and called a taxi service to pick her up from in front of her mother's residence, located in New Orleans, Louisiana. Edna Ben also testified that, within the course of that day, she learned that while claiming to only want a slice of gum, C. Ben had actually used that opportunity to steal a credit card and cash money

PAGE #3

from her mother's purse. (R.p. 514 of trial transcripts.)  When the taxi arrived, C.

Ben entered the taxi, and departed from her mother's residence.  C. Ben directed

the taxi driver, later identified as Elliot Flood, to travel in the direction of Slidell,

Louisiana.  Once the driver reached Slidell, C. Ben placed several text messages to

Petitioner's phone requesting that he text her his home address.  Petitioner

complied and the address was given to the taxi driver.  As Mr. Flood drove into

Petitioner's driveway, he announced to C. Ben that the fare had come to a total of

eighty-five (85) dollars.  C. Ben attempted to pay the fare using the credit card that

she had stolen from her mother, but Mr. Flood would not accept it.  At that point,

C. Ben called Petitioner's phone, and pleaded with him to pay the fare.  Petitioner

exited the residence and paid the fare on behalf of C. Ben. (R.p.  691 - 692 of trial

transcripts.)  Petitioner and C. Ben entered Petitioner's residence.

        After entering the residence, the two of them went onto Petitioner's

bedroom.  C. Ben later claimed this to be the point of which Petitioner forced her

to engage in sexual conduct.  Within trial proceedings, C. Ben claims that

Petitioner forced her to engage in sex, but that during the encounter, a vehicle

pulled into Petitioner's driveway and blew it's horn.  C. Ben stated that Petitioner

got up, got dressed, and exited the residence to greet an elderly woman, later

identified as Gwen Walker, and three (3) small children.  Both, Gwen Walker and

C. Ben, testified during trial to Petitioner remaining outside speaking with Ms.

Walker for approximately twenty (20) minutes before returning inside the

residence.  C. Ben then asked Petitioner to use his bathroom.  Petitioner directed

C. Ben to the bathroom where she remained approximately ten (10) minutes.

According to C. Ben's trial testimony, after exiting the bathroom, she told

Petitioner that she was ready to go home.  Subsequently, Petitioner and C. Ben

**PAGE #4**

exited the residence, but C. Ben claimed that she passed up Petitioner's vehicle and continued walking down the street. C. Ben stated that petitioner got into his vehicle, caught up with her, and asked her to get in so that he could bring her home. C. Ben stated that she voluntarily entered the vehicle, and Petitioner began driving in the direction of her residence. Petitioner stopped at a gas station in New Orleans East. While Petitioner was inside of the gas station, C. Ben exited the vehicle and went to a hotel where she called her sister, who in turn called police.

Once officers from the New Orleans Police Department (NOPD) arrived at C. Ben's location, C. Ben told Detective Greg Powell of the NOPD that earlier in that morning she exited her front door intending to jog around the corner. Once she got outside, she saw an unfamiliar bag sitting behind her front door. C. Ben claimed that as she turned in order to examine the unfamiliar bag, three (3) masked men ran up behind her and kidnaped her. C. Ben stated that the men threw her into an unknown red vehicle and drove away. C. Ben told Detective Powell that after a while she was able to escape from her kidnappers and make her way to a nearby hotel. But, as C. Ben was offering this version of events to law enforcement officers, Edna Ben was going through C. Ben's cellular phone and discovered that C. Ben had called a taxi service at approximately the same time that she had gone missing. This information was given to Detective Greg Powell of the New Orleans Police Department (NOPD), who in turn contacted the taxi service. Detective Powell spoke to the driver of the taxi that picked C. Ben up from 3811 Lennox Blvd in New Orleans, and dropped her of at 1326 Hickory Street in Slidell Louisiana.

Detective Powell then presented C. Ben with the knowledge he had

**PAGE #5**

discovered. C. Ben quickly offered yet another version of events, stating that she had in fact called a taxi service but "nothing had happened". After continuous questioning by Detective Greg Powell, C. Ben offered a third version of events, stating that "she had engaged in unprotected sex with a man that she would not or did not want to identify".

C. Ben was then transported to Children's Hospital located in New Orleans Louisiana. At this point, Detective Alvin Hotard and Rachel Smith of the Saint Tammany Parish Sheriff's Department began their investigation. Subsequently Petitioner was arrested in the early morning hours of Tuesday, January 17, 2012.

**PAGE #6**

MEMORANDUM OF LAW: CLAIM #1

## SUMMARY OF ARGUMENT #1

Petitioner was denied his constitutional rights as it pertains to the Fifth Amendment of the United States Constitution, when the Twenty-Second (22nd) Judicial District Court of Saint Tammany granted the state use of condemning coerced confession made under unconstitutional duress, that wad obtained in direct violation of law per "Miranda" and it's publication to the jury. Petitioner's constitution rights were severely ignored and violated by the constituted authorities of the State of Louisiana and the Parish of Saint Tammany, in disregarding these rights entitled to petitioner.

**ARGUMENT:**
**Assignment of Error #1:**

Violation of Petitioner's rights under "**Due Process of Law**" Claus, guarantee by the Fifth Amendment of the United States Constitution.

## STANDARD OF REVIEW

In reviewing evidence presented by Petitioner, the Honorable Court must determine whether the evidence introduced to support Petitioner's claim is factual and presents an infringed violation of Petitioner's constitutional rights during the judicial process leading up to conviction. The evidence must be sufficient enough to prove that the confession made by Petitioner was obtained in any violation of Petitioner's right to have counsel present during questioning. (Miranda v. Arizona, 384 U.S. 436 (1966); Massiah v. U.S., 377 U.S. 210 (1964); Butler v. McKellar 494 U.S., 407.

## Argument #1

Petitioner was arrested on the 17th day of January 2012 and transported to the Saint Tammany Parish Justice Center. Shortly after entering the building,

Page #7

Petitioner was approached by an individual who identified himself as Detective Alvin Hotard of the Saint Tammany Parish Sheriff's Department. Detective Hotard explained that, although he normally worked homicide cases, he would be the lead detective on this particular case. Detective Hotard quickly presented Petitioner with an ink pen and a sheet of paper entitled, "Incident Report", asking Petitioner if he wished to provide any statements regarding "any event that may or may not have occurred on the morning of January 16, 2012". But, Petitioner insisted that his arrest must have been "some sort of mistake" because, to his recollection, nothing had taken place which would have warranted his arrest, and immediately requested the presence of an attorney.

This fact is evident within an Affidavit of Arrest, which was constructed by Detective Hotard, and submitted before the Honorable Judge William J. Knight by Sergeant Brian O'Cull, also of the Saint Tammany Parish Sheriff's Department, on the 19th day of January 2012. Within law enforcement's own written words, it clearly reads "Petitioner <u>refused to answer any questions relative to having sexual intercourse with the victim, stating that he (Petitioner) had been down this road before, and wanted an attorney</u>." (<u>Pg. #1A para. #7 ln. #3 - #5</u>.) This statement clearly and precisely displays assessment of Petitioner's right to have legal counsel present during questioning, and should be assessed as such.

Despite of the fact regarding the aforementioned Affidavit being authorized on the 19th day of January 2012, Sergeant Brian O'Cull entered the Saint Tammany Parish Jail, accompanied by Investigator Mike Rodriguez, of the Saint Tammany Parish Coroner's Office, with the intentions of conducting a search warrant for the body/person of Petitioner.

Page #8

Within the Supplemental Narrative Report written by Detective Hotard, it is documented that Sergeant O'Cull went before the Honorable Judge Williams J. Knight with an Affidavit for Search Warrant, on the 19th day of January 2012, and it was authorized at 10:51 a.m. (**Page # 1B - #1C paragraph #6 and #1**). On (**page 1C paragraph #2 line #1 - #5.**) its reads, "At approximately 2:00 p.m., same date, Sergeant O'Cull and Saint Tammy Parish Corner's Office investigator Mike Rodriguez executed the search warrant issued for the body/person of Eaglin, (Petitioner) at the Saint Tammy Parish Jail where Eaglin was incarcerated. The collection of evidence occurred in the medical office area of the Saint Tammany Parish Jail.

Sergeant O'Cull claimed that upon the completion of the search warrant, Petitioner stated that he wished to make a formal statement of Detective Hotard about the forcible rape he had been charged for. But, Petitioner argues that the statements recorded by Sergeant O'Cull was obtained in direct violation of Petitioner's rights per "Miranda" as it pertains to the "**due process of law**" clause.

In support of this argument, Petitioner first refers to the documentation written by Detective Hotard. On page #1B paragraph #6, it states that the affidavit for search warrant presented by Sergeant O'Cull was authorized by Honorable Judge Williams J. Knight at **approximately 10:51 a.m.** on January 19, 2012. **Page #1C paragraph #2** states that Sergeant O'Cull and investigator Rodriguez made contact with Petitioner at **approximately 2:00 p.m.** same date. At the conclusion of the search warrant, Sergeant O'Cull conducted a second interrogation of Petitioner with yielded an audio recording which was introduced into trial as State's Evidence #17. But, by conducting this second interrogation,

Page #9

the court would have to assume that Sergeant O'Cull either forgot about Petitioner's request for an attorney, which is written within the Affidavit for Search Warrant by Saint Tammany Parish Law Enforcement, or he just acted in total disregard of Petitioner's right to have legal counsel.

While the court may interpret this act as a "minor overlook" pursuant to the signed "waiver of rights" form introduced into trial as State's Evidence #16, Petitioner insist that the actions of Detective Hotard and Sergeant O'Cull during trial offers further validity to his claims. During trial, defense counsel asked the same question, continuously, to both Detective Hotard and Sergeant O'Cull, "did the Defendant [Petitioner] ever ask for an attorney during questioning?' Despite of Petitioner's statement be quoted within a document written by Sergeant O'Cull and Saint Tammany Parish Sheriff's Department filing it into evidence, both officers repeated answered "no!"

Such a bold act of perjury, such because it is proven by documentation, offers significant weight to two (2) critical truths. One, that law enforcement had to be fully aware of Petitioner's assertion of his 5th Amendment Rights, which is guaranteed by the United States Constitution. Two that the second interrogation performed by Sergeant O'Cull was in direct violation of that right. Petitioner argues that the use of the audio recording during trial weighed heavily upon the jurors and played an enormous role in securing a guilty verdict for the State. Petitioner submitted a motion to Enroll as Co-Counsel, which was received and filed by the Clerk O Court on the 13th day of August 2012, in an effort to present evidence favorable to his [Petitioner's] defense that assigned attorneys from the Public Defender's Office refused to present. Honorable Judge Scott Gardner

**Page #10**

denied Petitioner motion. (pg. # 1D)

MEMORANDUM OF LAW: CLAIM #2

## SUMMARY OF ARGUMENT #2

Petitioner was denied his constitutional right, as it pertains to the Fifth Amendment and Fourteenth Amendment, Section 1 of the United States Constitution, when members of the Saint Tammany Parish Sheriff's Department made threatening remarks towards Petitioner and his family, which prompted Petitioner to make an involuntary coerced confession. The contents of this coerced confession was introduced into State's evidence, and published before the jury at Petitioner's trial. Petitioner argues that this coerced confession, which petitioner made under unconstitutional duress, is what ultimately decided the guilty verdict. .

**ARGUMENT:**
**Assignment of Error #2:**

Violation of Petitioner's rights under the "due process of law" clause, guaranteed by the Fifth and Fourteenth Amendment, Section 1 of the United States Constitution.

## STANDARD OF REVIEW

The alleged confession, oral or written, alleged to have been given by Petitioner, is illegal as evidence because it was not freely or voluntarily secured nor given. Petitioner's constitutional rights were recklessly violated as it pertains to the "due process of law" clause of the Fifth and Fourteenth Amendment, Section 1 of the United States Constitution. The constitutional rights of the Fourteenth Amendment were deliberately over-ridden by the constituted authorities of the State of Louisiana and the Saint Tammany Parish in obtaining and displaying the coerced confession before the trial jurors. Roger v. Richmond, 365 U.S. 534 (1961); Ashcraft v. Tennessee, 322 U.S. 143 (1944); Butler v.

Page #12

McKellar, 494 U.S. 407 (1990).

## Argument #2

Petitioner was arrested on the 17th day to January 2012, at approximately 2:00 a.m. As recorded by Detective Alvin Hotard of the Saint Tammany Parish Sheriff's Department, Petitioner was initially interrogated by Detective Hotard relative to anything unusual that may have occurred on January 16, 2012. As displayed within the Affidavit for Search Warrant presented before the Honorable Judge William J. Knight on the 19th day of January 2012, Petitioner replied, "Keefer [Petitioner] refused to answer any questions relative to having sexual intercourse with the victim, stating that he had been down this road before and wanted an attorney". Without anything else to say, Petitioner was transported to the Saint Tammany Parish Jail.

But, on the 19th day of January 2012, Sergeant Brian O'Cull, of the Saint Tammany Parish Sheriff's Department, entered the Saint Tammany Parish Jail accompanied by Investigator Mike Rodriguez, of the Saint Tammany Parish Coroner's Office, for the purpose of conduction a search warrant on the body/person of Petitioner. Petitioner submits an entry with the Supplemental Narrative Report written and submitted by Detective Alvin Hotard of the Saint Tammany Parish Sheriff's Department. Within the submitted entry, it states, "On Thursday January 19th, 2012, at approximately 10:51 a.m., Sergeant Brian O'Cull presented before Judge William Knight of the 22nd Judicial Court, an affidavit for a search warrant to be issued for the collection of forensic evidence from Keefer Eaglin. [Petitioner]. Judge Knight reviewed, granted and issued said search warrant accordingly" (Pg. #2A - #2B para. #6 ln. #1 -#5).

The following paragraph states, "At approximately 2:00 p.m. same date,

**Page #13**

Sergeant O'Cull and Saint Tammany Parish Coroner's Office Investigator

Rodriguez executed the search warrant issued for the Body/Person of Eaglin

[Petitioner] at the Saint Tammany Parish Jail, where Eaglin [Petitioner] was

incarcerated. The collection of evidence occurred in the Medical Office of the

Saint Tammany Parish Jail".

Petitioner points out that within the following paragraph, it reads,

"Sergeant O'Cull and Investigator Rodriguez concluded the search warrant at

approximately 2:55 p.m., same date. Upon completion of the search warrant,

Eaglin (Petitioner) informed Sergeant O'Cull that he wished to make a formal

statement to Detective Hotard about the forcible rape he [Petitioner] had been

arrested for. At that time, Sergeant O'Cull advised Eaglin [Petitioner] of his

rights per "Miranda", as well as his waiver of rights. Sergeant O'Cull then

allowed Eaglin (Petitioner) to read the form, and Eaglin subsequently signed his

name in both places. At that time, Sergeant O'Cull began the recorded interview

with" (**pg. #2B para. #5 ln. #1 - #3**).

Petitioner argues that this version of events described by Detective Hotard

and Sergeant O'Cull is significantly inaccurate, and the recorded statements

obtained from Petitioner was acquired through acts of coercion, and made under

unconstitutional duress from members of law enforcement. Petitioner maintains

that the introduction of the coerced statements into trial was a major determining

factor in obtaining a guilty verdict for the State.

In support of his argument, Petitioner first introduces a copy of the "waiver

of rights" form, which is attached to a copy of the "Statement of Miranda Rights"

form. As documented with the provided evidence, and as Sergeant O'Cull

Page #14

testified to in trial, "Sergeant O'Cull then allowed Eaglin [Petitioner] to read the forms, and subsequently signed his name in both places". But, in reviewing these forms, it is noticeable that Petitioner's signature is substantially distant from the line indicated for signatures (**pg. #2C**). Petitioner offers two (2) explanations as to the reason for this. First, Petitioner submits documentation from several different eye doctors and medical clinics that offers written commentary and multiple images of Petitioner's eyes, explaining the severity of his glaucoma and retinal detachment, which left Petitioner legally blind. These documents are dated from July 24, 2010 to February 14, 2012, indicating that Petitioner had this condition well before the date of the alleged incident and continued long after said date. Each individual whom took the stand and was asked to identify Petitioner, indicated that Petitioner had a covering on each eye. In fact, C. Ben testified during trial procedures that Petitioner had made her aware of his vision impairment prior to the day in question. The second explanation is that Sergeant O'Cull gave Petitioner an ink pen, and made an attempt to place Petitioner's hand on the area to sign, but due to Petitioner's vision impairment, the signatures appears slanted and distant from the line (**pg. #2H - #2ZI**).

In further support of Petitioner's argument, Petitioner refers to the individuals whom conducted the search warrant performed on January 19, 2012. Detective Hotard documented that Sergeant O'Cull entered the Saint Tammany Parish on January 19, 2012, accompanied by Investigator Mike Rodriguez of the Saint Tammany Parish Coroner's Office to execute a search warrant. (**pg. #2B para. #2 ln. #2 - #5**). In **paragraph #5**, same page, it reads, "upon completion of the search warrant, Eaglin [Petitioner] informed Sergeant O'Cull that he wished to make a formal statement to Detective Hotard about the forcible rape he had been

Page #15

arrested for". But, Petitioner makes notice that Investigator Rodriguez or his location is no longer mentioned throughout the remainder of this narration. In fact, Investigator Rodriguez was not called by the State to confirm this statement, despite his proximity and importance to such a sensitive situation. Petitioner provides further support to his argument by presenting Sergeant O'Cull's trial testimony. During trial, Sergeant O'Cull was asked to describe the events that transpired leading up to him obtaining the recorded statements of Petitioner. Sergeant O'Cull stated that "Upon completing the search warrant, dated January 19, 2012, Petitioner informed Sergeant O'Cull that he wished to make a formal statement to Detective Hotard regarding the charges against him". Sergeant O'Cull continued his trial testimony, saying that he advised Petitioner of his rights per Miranda, as well as his waiver of rights. At that time, he allowed Petitioner to read the form, and Petitioner signed both forms. Sergeant O'Cull stated that he then began questing Petitioner. Defense Counsel asked Sergeant O'Cull if he had a recorder already in his possession. Sergeant O'Cull advised that he had to go to his vehicle to retrieve one, stating that he kept a recorder in his vehicle just in case. But, within the documentation presented by Petitioner, dated February 15, 2012, Sergeant O'Cull is quoted as stating, "At that time, Sergeant O'Cull advised Eaglin of his rights per Miranda, as well as his waiver of rights". Sergeant O'Cull than allowed Eaglin to read the form, and Eaglin subsequently signed his name in both places. At that time, Sergeant O'Cull began the recorded interview with Eaglin. **(pg. #2B para. #6 ln. #1 - #4)**. Sergeant O'Cull did not make any reference to him needing to exit the jail to retrieve a recorder, nor a "Miranda Rights Form" or a "Waiver of Rights Form" from his vehicle. Not only did Sergeant O'Cull have an audio recorder within his possession, but also a Miranda

Rights Form" and "Waiver of Rights Form", despite not having a need for neither of them pursuant to an authorized search warrant. Petitioner maintains that Sergeant O'Cull entered the Saint Tammany Parish Jail on January 19, 2012, with all of these tools within his possession, and a predetermined mind to coerce a statement form Petitioner.

In additional support of Petitioner's claim of coerced confession, Petitioner offers three (3) different versions of Petitioner's initial interrogation, which was performed by Detective Hotard. All three (3) of these versions were also written by Defective Hotard. In the first version documented by Defective Hotard, it reads, "After being advised of his Rights per Miranda, Keefer Eaglin [Petitioner] provided Defective Hotard with a short account of what occurred at 1326 Hickory on January 16, 2012". Detective Hotard found Keefer's statement to be supportive of what the victim reported, acknowledging that she was present at his residence with him on said date. **Keefer refused to answer any questions relative to having sexual intercourse with the victim stating that "he had been down this road before and wanted an attorney",** Keefer was subsequently charged accordingly pwr the issued arrest warrant for the offense of forcible rate. Keefer was then transported to the Saint Tammany Parish Jail by uniformed personnel and booked accordingly. **"(pg. #2D para. #7 ln. #1 - #7).**

The second version of this very same interrogation reads, **"After being advised of his Rights per Miranda, Keefer Eaglin [Petitioner] provided Detective Hotard with a short account of what occurred at 1326 Hickory on January 16, 2012. Detective Hotard found Keefer's statements to be supportive of what the victim reported. Keefer was subsequently charge**

Page #17

accordingly per the issued arrest warrant for the offense of forcible rape.

Keefer [Petitioner] was than transported to the Saint Tammany Parish Jail

by uniform personnel and booked accordingly.  Petitioner makes notice that

these two entries are similar in contrast, except for the fact that Detective Hotard

failed to include the portion which refers to Petitioner requesting the presence of

an attorney (<u>pg. 2E para. #5 ln. # 1 - #6</u>).  Petitioner request the court's attention

to the date displayed on this document, which is displayed on the bottom left side

of this page.  This date displays a date of 01/17/2012, the day Petitioner was

arrested.

But in the third version documented by Detective Hotard, Detective Hotard

describes an entirely different version than the pervious two.  This version reads,

"Eaglin advised that he met Ben through a website called "tagged" and

according to her profile, she was nineteen years old.  Upon meeting each

other, they chatted online for three to four days, until Sunday, January 15,

2012 when they spoke over the phone.  Eaglin advised that during the

conversation, they planned to meet at Eaglin's residence the next day,

Monday, January 16, 2012, and Ben advised she would drive there.  Eaglin

further advised that same time in the morning on Monday, January 16, 2012,

Ben arrived at his residence in a cab, which he was forced to pay for because

Ben had no money.  Upon seeing Ben, Eaglin asked her to see some

identification because he thought she looked younger that nineteen years old.

When Ben could no provide any identification, Eaglin told her to get into his

car because he was going to take her back home to the Westbank of New

Orleans.  Upon driving there on interstate 10, Eaglin advised that he stopped

at a gas station and during that time Ben ran off, but he did not know where

Ben ran off to. Eaglin then drove back home. **Eaglin advised that at no time did he and Ben ever engage in any type of inappropriate or sexual activities".** (**page #2F para. #4 lns. #1 - #15**). Petitioner request the Court's attention to the date displayed on this document, which is displayed on the bottom left side of the page. Despite this being the same report, and supposedly of the same event, it displays a date of 02/15/2012. This is approximately one (1) full month after the date of arrest.

Finally, Petitioner directs the Courts's attention to the report documented by Detective Greg Powell of the New Orleans Police Department (NOPD). This document reflects that the NOPD was the first to receive a call regarding C. Ben. On January 16, 2012, at approximately 9:45 a.m., the NOPD received a call from C. Ben's mother, Edna Ben, reporting her as missing or as a runaway. At approximately 12:15 p.m., the same date, C. Ben called her sister and informed her that she had been kidnaped by three (3) masked men. Her sister in turn called the police whom met C. Ben at her reported location, which was a hotel in New Orleans East. Once law enforcement arrived, C. Ben offered Detective Powell a detailed reiteration of what she had told her sister, stating that three masked mem ran up behind her at her residence, put a bag over her head, threw her into an unknown red vehicle, and kidnaped her, but she was eventually able to escape her kidnappers . During her questioning by Detective Powell, C. Ben mother arrived and began checking C. Ben's phone. It was discovered that C. Ben had called a taxi service earlier that morning. After further investigation, C. Ben finally admitted that she had used a cab to meet a man. Within **paragraph #4 lines #3 - #4,** Detective Powell quotes C. Ben as stating that "**she had caught the cab to a man's house at 1326 Hickory Street in Slidell La. but said they did not do**

Page # 19

**anything".** Petitioner makes notice that this is the only statement made by C. Ben, despite the many various statements made by her throughout the investigation, that is consistent with each statement of Petitioner that is documented by Detective Hotard (**Pg.# 2G**).

In conclusion, Petitioner maintains that his conviction was obtained as the result of unconstitutional duress. After being interrogated initially by Detective Alvin Hotard upon his arrest, Sergeant Brian O'Cull entered the Saint Tammany Parish Jail with one priority. Sergeant O'Cull instructed Investigator Rodriguez to exit the room, and threaten Petitioner to the point of which Petitioner feared for the safety of himself and his family, which subsequently lead to a coerced confession. During the course of the investigation, Petitioner submitted a Motion To Enroll As Co-Counsel, in an attempt to present the aforementioned evidence before the court, but Petitioner's motion was denied by the court (**pg. # 2H**)

MEMORANDUM OF LAW: CLAIM  #3

## SUMMERY OF ARGUMENT # 3

Petitioner argues that the bond amount set by the court was in excess of Petitioner availability to secure, subsequently, denying Petitioner to adequately prepare his defense and obtain suitable representation of choice. Petitioner's initial bail amount was significantly increased without any awareness, nor cause presented to Petitioner.

**ARGUMENT:**
**Assignment of Error #3**

### STANDARD OF REVIEW

Petitioner possesses the "Right to Bail" pursuant to the <u>Louisiana Constitution of 1974, Section 18</u>, which pertinently states:

> "A excessive bail shall not be required - Before and during
> a trial, a person shall be bailable by sufficient surety, except
> and the proof is evident and the presumption of guilt is great.
> After conviction and before sentencing, a person shall be
> bailable if the maximum sentence that may be imposed is
> imprisonment for five years or less and the judge may grant
> bail if the maximum sentence that may be imposed is five
> years. After sentencing and until final judgment, a person
> shall be bailable if the sentence actually imposed is five years
> or less, the judge may grant bail if the sentence actually
> imposed exceeds imprisonment for five years".

### ARGUMENT #3

Petitioner was arrested by the Saint Tammany Parish Sheriff's Department on January 17, 2012. On January 18, 2012 Petitioner appeared before the

**Page # 21**

Commissioner of Saint Tammany Parish for the purpose of receiving the charges against him and the required bail amount. At that time, the Commissioner informed Petitioner that the bail amount was set at One Hundred Thousand (100,000) dollars, **(pg. 3A)** Petitioner immediately informed the Commissioner that he would not be able to afford a bail of that magnitude, and requested a reduction of the amount. The Commissioner advised Petitioner that either he, or his attorney would need to submit a motion for Reduction of Bail.

In support of Petitioner's argument, first Petitioner presents a copy of the **"Application For Reduction of Bail"** signed and submitted by Kevin Linder of the Saint Tammany Parish Public Defender's Office (PDO). This document indicates that it was received by the Twenty-Second Judicial District Court and filed on the 27th day of January 2012 by Karen Sadowski, Deputy Clerk of Court. The date of filing appears in bold print within the top center of the page, and indicates the date of January 27, 2012 **(pg. #3B)**.

Next, Petitioner offers the **"Notice of Assignment"**, dated January 30, 2012, which reads, "Please be advised that the following motions in the above captioned matter have been assigned for hearing at 9:00 a.m. on February 3, 2012, with Judge Williams J. Burris presiding" **(pg. # 3C)** **Application For Reduction Of Bail**. Petitioner was not transferred to the court to participate in this assignment. Petitioner wrote his assigned public defender often to ascertain his status regarding the Motion For Reduction Of Bail".

Petitioner completed his term of imprisonment on August 24, 2013, and was transferred back to the Saint Tammany Parish Jail. Petitioner attempted to contact someone within the Public Defender's Office, but was unable to do so.

Petitioner offers the court entries of the court minutes dating from August 22, 2013 through November 4, 2013, which reflects that Petitioner was not present for neither of the proceedings (**pg.# 3D -#3G**). Petitioner was finally summoned before the court on November 15, 2013 due to a ruling from the First Circuit Court on Petitioner's Pro-Se Motion for Preliminary Hearing and Motion for Preliminary Hearing filed by the Office of Indigent Defenders. At this proceeding, Petitioner inquired about the bond reduction, which was when Petitioner was informed that his bail amount had been increased from the initial One Hundred Thousand (100,000) Dollars to Five Hundred Thousand(500,000) Dollars, but that the matter was on assignment for that day. Petitioner was handed a document by Public Defender, Amanda Trosclair, whom was now representing him. Due to Petitioner vision impairment, Ms. Trosclair informed Petitioner that he had been placed on the Court's docket for August 5, 2013 before the Honorable Judge William J. Burris. After discussion, the State Court set Petitioner's bond at Five Hundred Thousand (500,000) Dollars cash, property, or surety with a **no code six provision**. This does not indicate that the original bond, set at One hundred Thousand (100,000) Dollars, was being rescinded. Instead, it indicates that this was an initial bond setting (**pg. #3H**). Petitioner awaited the Courts reference regarding the bond reduction, but the issue was not discussed. On the first day of trial, November 18, 2013, Defense Counsel withdrew the Motion for Reduction of Bond without asking petitioner's opinion regarding the matter (**pg. # 3Ia para #4**).

In conclusion, Petitioner's bail amount was initially set at One Hundred Thousand (100,000) Dollars. Despite Petitioner's Motion For Reduction of Bail declaring his inability to secure the bail amount, on August 5, 2013, Petitioner's bail was significantly increased to Five Hundred Thousand (500,000) Dollars .

**Page #23**

The average bail amount within the past ten (10) years of the parish of Saint Tammany pertaining to this particular charge, was (Forty Thousand (40,000) Dollars.  Petitioner has never had a bond forfeiture, and had not been convicted of any "crimes of violence" in his past that would warrant such a significant and irrational increase in the bail amount.  Subsequently, the drastic increase of the bail amount denied Petitioner's constitutional rights under the Louisiana Constitution of 1974, Section 18 and the Eighth Amendment of the United states, which declares....

> **"Excessive bail shall not be required, nor excessive fines**
>
> **Imposed, nor cruel and unusual punishments inflicted.**

Petitioner submitted a Motion to Enroll as Co-Counsel, which was received and filed by the clerk of court on August 13, 2012, in an effort to present evidence favorable to his [Petitioner] defense that assigned attorney within the Public Defender's Office refused to present.  The Honorable Judge Scott Gardner denied Petitioner's motion.

**MEMORANDUM OF LAW: #4**

## SUMMARY OF ARGUMENT #4

Petitioner wad denied his constitutional rights, as it pertains to the Fifth,

Sixth and Fourteenth Amendment (**Section 1**), by the ineffective assistance of

counsel provided to Petitioner by the Saint Tammany Public Defenders's Office.

Petitioner argues that attorneys within the Saint Tammany Parish Public

Defenders's Office, that was assigned to represent him throughout each phase of

said conviction, displayed several instances of insufficiency by:

**Lack of adequate  communication with Petitioner, lack of preparation, lack of**

**knowledge regarding the charges against Petitioner, failure to investigate**

**facts of the charge and a lack of commitment by each assigned Public**

**Defender during the entire trial process.**

**ARGUMENT:**
**Assignment of Errors #4**

Petitioner's Defense Counsel demonstrated on ineffectiveness of adequate

representation through the trial process.

## STANDARD OF REVIEW

In determining whether Defense Counsel was ineffective in providing

adequate representation to a petitioner, the Court must thoroughly examine the

actions of the legal counsel in investigating the facts of the charges against

Petitioner, and provide adequate and sufficient counsel in accordance with the law.

**Wiggins v. Smith, 539 U.S. 510 (2003); Strickland v. Washington, 460 U.S. 668**

**(1984); U.S. v. Chronic, 466 U.S. 648 (1984).**  Defense Counsel in the Appellate

Court may be proven to be insufficient in it's stage of representation.  **Smith v.**

**Robbins, 528 U.S. 259 (2000).**

Page # 25

## Argument #4

Petitioner was arrested on January 17, 2012.  On the same date, Petitioner was presented before the Parish of Saint Tammany Parish Commissioner, Mr. Foil, and bond was set at One Hundred Thousand (100,000) Dollars.  On January 20, 2012, Petitioner appeared before Commissioner Foil again, and was appointed the Twenty-Second (22nd) Judicial District public Defender's Office.  Petitioner remained in jail awaiting contact from the Public Defender's Office until finally, Petitioner submitted a Motion of Reduction of Bond, which was received and filed within the Twenty-Second Judicial District Court on the 27th day of January 2012.  On August 5, 2012, Petitioner appeared before the Honorable Judge William J. Burris for the purpose of felony arraignment.  Petitioner was introduced to John W. Hogue, who advised that he was with the Public Defender's Office, and that he had been assigned to represent Petitioner.  After entering a plea of not guilty, Felony Jury Trial was set for September 24, 2012, on motion of the Assistant District Attorney.

Petitioner remained in jail, made several attempts to contact Mr. Hogue to ascertain his status, but was unsuccessful.  On November 28, 2012, Petitioner was advised that Attorney John Hogue no longer worked for the Public Defender's Office (PDO), and Attorney Kathryn Fernandez, also with the PDO, would be representing me.  Although Petitioner never appeared in court with Kathryn Fernandez, Fernandez represented Petitioner from November 28, 2012 to April 22, 2012.

On June 10, 2013, Petitioner was advised that Attorney Kathryn Fernandez was no longer employed with the PDO, and Petitioner was introduced to Attorney

**Page #26**

Milton Manister, also from the PDO.  Attorney Milton Manister informed

Petitioner that he was assuming representation of Petitioner's Defense.  Attorney

Manister represented Petitioner in court on three (3) separate dates: **June 10,**

**2013, June 17, 2013; and July 15, 2013,** despite Petitioner no being present in

court.

On August 19, 2013, Petitioner was transported in the Twenty-Second

(22nd) Judicial district court, where Petitioner was introduced to Amanda Trosclair,

and informed that Ms. Trosclair was now assuming representation of Petitioner's

legal defense.

Petitioner remained in jail until November 15, 2013 when he was

summoned to appear before the Honorable Judge Scott Gardner.  At this time,

Petitioner was advised that Attorney Oliver Carrier, also with the PDO, was now

assuming "First Chair", of Defense Council, and Amanda Trosclair would assume

"Second Chair" on Defense Counsel.  Petitioner was also advised that a

Preliminary Examination was to be conducted that day, per ruling of the First

Circuit Appellate Court, ordering that Petitioner's Pro-Se Motion be Conduct ed.

The Court honored the First Circuit Ruling, and a Preliminary Examination was

conducted.  Subsequently, Petitioner's trial began November 18, 2013, and on

November 21, 2013, Petitioner was found guilty as charged in the "Bill of

Information".

Petitioner claims that Defense Counsel's and Appellate Counsel's

representation was insufficient, which ultimately aided in the conviction of

Petitioner.  In support of this claim, Petitioner offers several pieces of substantial

evidence before the court.

**Page #27**

grandmother, nor did C. Ben and her mother go home prior to going to

Children's Hospital. It is also well documented that C. Ben did not make any

mention of Petitioner. In fact, a member of the New Orleans Police Department,

Detective Greg Powell in his contact with C. Ben documented in his report that,

"C. Ben admitted to her mother, Edna Ben, that she did have sex with a man, who

she did not or would not identify" **(Pg. # 4 Para # 4 ln. #1 - #5)**.

The incorrect information listed throughout the brief written by Appellate

Counsel, as a collective, presents a hint of guilt on Petitioner. In contrast to the

trial transcripts, Petitioner argues that should the actual true facts been presented

to the Court of Appeals, the Courts decision may have been more favorable to

Petitioner. Appellate Counsel's failure to accurately and correctly inform the

Appeal's Court of facts pertain to Petitioner's trial deemed her to be ineffective in

representing Petitioner.

In conclusion to Petitioner's claim, Petitioner sites "Boston v. Kentucky.

Petitioner argues that defense counsel failed to defend Petitioner from being tried

from a completely Caucasian jury. Petitioner argues that, theoretically, this factor

favored the prosecution in obtaining a guilty verdict.

**Page #35**

First, Petitioner presents a list containing the names of each attorney within the Public Defenders' Office that was assigned to represent Petitioner throughout the trial process. The document also contains the dates of which each Public Defender was assigned. Petitioner makes notice that a total of five (5) different attorneys, all with the Public Defenders's Office, was assigned to represent Petitioner over a twenty-two (22) month period (**pg. 4A**). Although the fact that Petitioner was assigned said total of Public Defenders is not a violation of any State or United State Constitutional Rights, the failure of each previously assigned attorney to communicate with their successor denied his constitutional rights, as it pertains to the **"equal protection of the law"** clause, guaranteed by the Fourteenth Amendment of the United States Constitution. In November 2012, Petitioner submitted a Motion of Conduct Preliminary Examination into the 22nd Judicial District Court which was received and filed by the court on the 28th day of November 2012 (**pg.#. 4B**). Due to multiple court ordered continuations, Petitioner submitted a Writ of Mandamus into the First Court of Appeals requesting that a ruling be passed down ordering the District Court to honor Petitioner's Motion of Conduct a Preliminary Examination. The First Circuit Court granted Petitioner's Writ request. On the 15th day of November 2013, Petitioner appeared before the Honorable Judge Scott Gardner for the purpose of conducting said Preliminary Examination. But in the opening statements of Defense Counsel, the District Attorney, and the Honorable Judge Scott Gardner each stated that they were unaware of said Motion (**pg. 4C**). Thus, Defense Counsel did not have any preparation in place to adequately and sufficiently represent Petitioner, during the Preliminary Examination.

Petitioner offers several Court Minutes Entries which states that the

**Page #28**

Motion to Conduct Preliminary Examination was placed on assignment before the Court on multiple dates. The provided documentation also reflects that each of the assigned Public Defenders represented the Petitioner in court at least once in regards to said Motion (**pg. #4D - #4I**). In fact, the Motion to Conduct Preliminary Examination was submitted from within the Public Defender's Office by Kathryn Fernandez. Each attorney represented Petitioner for assignment of Preliminary Examination (**pro-Se**) and Preliminary Examination (**PDO**) by Defense Counsel claiming to not have knowledge of said motion, no witnesses were summoned on Petitioner's behalf. Petitioner insist that if the attorneys assigned to him from within the Public Defender's Office had adequately established communication amongst themselves and with Petitioner, preparation, awareness, and knowledge of the case's status may have prevented the guilty verdict.

Furthermore, Petitioner argues that Defense Counsel was ineffective in it's failure to conduct a reasonable pre-trial investigation (**Wiggins v. Smith 539 U.S. 510 (2003)**). Defense Counsel obviously did not make any attempts to investigate any matters of the trial. During the course of trial, several facts that were beneficial to Petitioner were discovered. Petitioner advised Defense Counsel that his thirteen (13) year old son, Trevon Eaglin, was inside of the residence, unknowingly to the alleged victim, during the time of the alleged incident. Petitioner offers the court an entry within the Supplemental Narrative Report written by Detective Alvin Hotard of the Saint Tammany Parish Sheriff's Department, which indicate that Petitioner's son, Trevon Eaglin, was questioned by members of law enforcement on the morning of Petitioner's arrest (**pg. #4J para. #1 ln. #1 - #6**). Defense Counsel did not make any attempts to call or

Page #29

notify Petitioner's son in reference to testifying during trial. Petitioner submits an affidavit written by Trevon Eaglin, and witnessed by a notary public, describing and explaining what he would have testified to should he had been summoned to testify.

Petitioner argues that Defense Counsel failed to investigate areas of the charge that would have undeniably proven Petitioner's innocence . During trial procedures, the state declared that Petitioner drove a red vehicle from Slidell, Louisiana over forty(40) miles on a major interstate to New Orleans East. The state also claimed that Petitioner stopped at a convenience store for gas once he reach New Orleans, at which point C. Ben exited the vehicle and ran to a nearby hotel.

Petitioner advised each Public Defender that was assigned to him, that the version of events claimed by C. Ben can be proven to be false should the Public Defender's Office request to view traffic cameras, that may have been at either the convenience store that C. Ben referred to, or the hotel that C. Ben claimed to have ran to. On June 11, 2012, Petitioner contacted the Department of Transportation (DOT), and was advised that there are several traffic cameras at the intersection of which the convenience store is located. Should either of these cameras been viewed, or Defense Counsel investigated this portion of the State's claim, it would have been proven that Petitioner was not anywhere near the convenience store, nor the intersection of which it is located. This failure to investigate favorable unbiased evidence significantly aided in the conviction of Petitioner, and substantially renders the ineffective assistance of Defense Counsel.

Defense Counsel also failed to request Detective Greg Powell's testimony

**Page #30**

during trial proceedings.   Detective Powell is a member of the New Orleans Police Department, and he is also the first member of law enforcement to come into contact with the alleged victim and question her.  Petitioner submits a report written by Detective Powell, which narrates the details of his initial encounter with the alleged victim.  Detective Powell documented the alleged victim, C. Ben, offering an sophisticated false statement of being kidnaped by three (3) men, and managing to escape their grasp.  After further questioning, Detective Powell learned that C. Ben had called a taxi service, and went to a man's house that she "did not or would not identify" (**pg.  #4K para. #4 ln. #4 - #5**).  Defense Counsel neglected to investigate the contents of the report.  Petitioner obtained this report when a request was made for a complete copy of the Discovery.  This would suggest that Defense Counsel was or should have been aware of this report.  Defense Counsel did not make any attempt to inform Petitioner of this report during any point of the investigation or trial process.

Within the second paragraph of Detective Powell's report, it also states that the first person that C. Ben called was her sister, Lyn Ben.  Defense Counsel neglected to make any attempts to contact Lyn Ben to investigate the contents of that call, C. Ben's state of mind, or demeanor when that call was placed, or what was the nature of conversation between the two fo them.  As noticed within the narrative report written by Detective Alvin Hotard of the Saint Tammany Parish Sheriff's Deportment, C,. Ben supposedly called several different people first.  Therefore, failing to call this individual to testify in court, proves that Defense Counsel was ineffective in investigating the facts surrounding the occurrences of the charges against Petitioner (**pg. #4K par. #2 ln. #1 - #10**).

**Page #31**

Petitioner also argues that Defense Counsel so utterly failed to defend against the charges, that the trial was the functional equivalent of a guilty plea, rendering counsel's representation presumptively inadequate. **(U.S. v. Chronic, 466 U.S. 648 (1984)** At the point of arrest, Petitioner made several attempts to inform law enforcement of his severe medical conditions. On the 20th day of January 2012, Petitioner was appointed the Twenty-Second (22nd) Judicial District Public Defender's Office. As Petitioner awaited contact form the Public Defender's Office, Petitioner submitted medical records pertaining to legal blindness and diagnosis of his lower extremities into evidence. These records, which dates from June 24, 2010 to as recent as March 13, 2012, indicate that petitioner suffered from retinal detachment and glaucoma caused by diabetic retinopathy. The dates indicated on these documents prove that Petitioner had these medical conditions, at least, eighteen (18) months prior to his arrest. This set of documentation also includes notation from Vera William, APRN, at the L.S.U Medical Center, indicating that Petitioner lacked any sensation throughout the bottom of either one of his feet. **(Pg. #4L- #4Z)**. The presentation of these documents within trial may have created doubt to the jury regarding the alleged victims trial testimony stating that Petitioner had driven a vehicle over forty (40) miles upon a highway in that physical condition. Again, Petitioner obtained the copies provided to this court within the Discovery Packet provided to Petitioner by the Public Defender's Office suggesting that Defense Counsel was aware of this critical piece of exculpatory evidence. But Defense Counsel neglected to introduce any of these medical documents into trial. Failure to introduce such exculpatory evidence is a prime example of ineffective assistance of legal counsel, which ultimately aided in securing a guilty verdict for the state.

Petitioner also argues that Appellate Counsel was ineffective during their representation. Smith v. Robbins 528 U.S. 259 (2000). Petitioner was convicted on November 21, 2012 and sentence to a prison term of eighty (80) years, without the benefit of parole, in the Department of Corrections. An application was filed on behalf of Petitioner by Defense Counsel, Oliver Carrier. Petitioner was assigned the Louisiana Appellate Project, and received Katherine M. Frank as representation. Petitioner claims that Attorney Katherine Frank was ineffective in her representation by the lack of attention and detail regarding the case. In support of this claim, Petitioner begins by offering the Court the cover page of the Appeal Brief prepared by Appellate Counsel. The lack of attention is obvious in Appellate Counsel referencing the docket number as, 51994, when in fact, the correct docket number is 519994 (**pg.4AA**). Appellate Counsel continued to display a lack of attention and detail in her representation by stating the elements of the case incorrectly with the Appeal Brief submitted for review.

On page ( **#4BB paragraph #2 lines #5 -#9**), it reads "The defense filed for quash of the multiple offender bill". (**R.pp. #153**). At the hearing, the trial judge quashed the bill as to a conviction emanating from St. Landry Parish in 1999 but adjudicated Mr. Eaglin (Petitioner) a second offender and sentenced his to serve eighty (80) years imprisonment with benefit of parole (**R.pp. #161 - #163**). But, in reviewing the transcripts of said hearing, it is proven that Appellate Counsel's dictation is significantly incorrect. On March 28, 2014, Petitioner was present within Court on assignment for Felony Sentencing, Multiple Offender Hearing, and Answer a Motion to Quash Multiple Offender Bill. Petitioner submitted to having his fingerprints taken for the purpose of this hearing. Petitioner's fingerprints were presented to Lloyd T. Morse, a fingerprint analysis technician, whom was

stipulated to be an expert in his respected field. Mr. Morse testified that, as an expert, he could not one hundred percent (100%) identify the fingerprints associated with docket number: **98 - K - 2077 - B (S2)** to be identical to the fingerprints of which Petitioner provided on that day. The Honorable Judge Scott Gardner stated "we have a match on the name and Social Security Number. That will be enough". The hearing continued, and subsequently Petitioner was sentenced to serve eighty (80) years.

On the fourth (4ᵗʰ) page of Appellate Counsel's brief, she make reference to Petitioner going outside to smoke (**pg. 4CC para.#3 ln. #2**). Although this detail may be interpreted as irrelevant, it is still incorrect. There was not any mention of this transpiring from any individual during the entire investigation or trial process. Appellate Counsel continued to offer incorrect information not known in trial on (**pg. #4DD para. #2 ln. #5**) when she stated, "Using the hotel phone, she ( C. Ben) called her grandmother"(**pg. #4DD para. #2 ln. #5**). But, throughout the investigative report written by Detective Greg Powell of the New Orleans Police Department and the Narrative Report written by Detective Alvin Hotard of the Saint Tammany Parish Sheriff's Department, it does not state that C. Ben ever called her grandmother. Within the same **paragraph, line #7 - #10**, Appellate Counsel writes, "It was not until she ( C. Ben) got home that she ( C. Ben) told her mother that she ( C. Ben) and Keefer Eaglin had sex, but that Keefer (Petitioner) had forced her. Her mother took C. Ben to children's hospital for an examination. Based upon the findings of vaginal tearing, the Saint Tammany Parish Police were called" (**pg. #4DD para. #2 ln. #1- #10**). There is not any entry within the investigation report or trial transcripts that describes a version of events such as this. Documentation and trial testimony proves that C. Ben never called her

MEMORANDUM OF LAW #5

## SUMMARY OF ARGUMENT #5

Petitioner was denied his constitutional rights, as it pertains to the "**due process of law**" clause, guaranteed by the Fifth and Fourteenth Amendment of the United States Constitution, by the State's Prosecutor knowingly using perjured testimony to obtain a conviction.

**ARGUMENT:**
**Assignment of Error #5**

Prosecutor's use of perjured testimony.

### STANDARD OF REVIEW

The Fifth and Fourteen Amendments to the United States Constitution and Article 1, Section 1 and 16, of the Louisiana Constitution protects persons from being deprived of life, liberty, or property, except by due process of law, which includes the right to a fair trial.  While the State and the Defendant both reserve the right to summon witnesses to testify in court on either chosen parties' behalf, the Prosecutor knowingly using perjured testimony to obtain a conviction is a direct violation of constitutional rights.  **Napue v. Illinois, 360 U.S. 264 (1959).**  Defense Counsel knowingly introducing perjured testimony into trial also creates a constitutional violation.  **Nix v. Whiteside, 475 U.S. 157 (1986).**

### Argument #5

Petitioner was arrested on January 17, 2012, by the Saint Tammany parish Sheriff's Department.  After being detained and transported to the Saint Tammany Parish Sheriff Department, Petitioner was approached by Defective Alvin Hotard of the Saint Tammany parish Sheriff's Department, whom conducted a brief interrogation of Petitioner.  The results of that interrogation is documented several times within the investigative report, which was written and submitted for review

to the office of the Honorable District Attorney. Subsequently, Petitioner was charged and transported to the Saint Tammany Parish Jail.

On January 19, 2016, Sergeant Brian O'Cull, also of the Saint Tammany Parish Sheriff's Department, entered the Saint Tammany Parish Jail accompanied by Mike Rodriguez, an investigator with the Saint Tammany Parish Coroner's Office, for the purpose of serving and conducting a search warrant on the body/person of Petitioner for DNA samples and a analysis. At the conclusion of conducting the search warrant, Sergeant O'Cull instructed the Coroner's Office Investigator, Mike Rodriguez, to exit the room where the search warrant was conducted. Sergeant O'Cull produced an audio recorded, and initiated a secondary interrogation of Petitioner. Although Petitioner advised that the contents of the recording was coerced by law enforcement and obtained through fear of his and his family's safety, and unconstitutional duress, the audio recording of that interrogation was published before the jury.

Petitioner argues that the prosecutor knowingly used perjured testimony, in regards to securing the audio recording, to obtain the conviction of Petitioner. In support of argument, Petitioner submits a copy of the Affidavit for Search Warrant, which was presented for authorization before the honorable Judge William J. Knight, of the Twenty-Second (22ᵈ) Judicial Court, by Sergeant Brian O'Cull. Within the submitted affidavit it states, **"Keefer [Petitioner] refused to answer any questions relative to having sexual intercourse with the victim, stating that he had been down this road before and wanted an attorney". (pg. #5 A para. #7 1n #3 - #5)**. During the investigation process, Saint Tammany Parish Law Enforcement also served a search warrant at Petitioner's residence and

on his property.  Petitioner submits an Evidence Receipt containing a list of items

seized from Petitioner's residence on the morning of his arrest **(pg. #5B)**.  Each

item listed was recovered from the bedroom area of which the alleged victim

claimed the incident had taken place.  The Saint Tammany Parish Crime lab

conducted a meticulous search for the alleged victim's Deoxyribonucleic Acid

(DNA), but each test conducted returned a negative result.  Saint Tammany Parish

Crime Lab Technicians also conducted a search for DNA of the alleged victim

inside and outside of Petitioner's red vehicle, which the alleged victim first claimed

to be kidnaped.  But, no DNA belonging to the alleged victim was found.  In fact,

the only DNA evidence referenced in trial was presented by Tara Brown, whom the

court stipulated to be an expert in her field of study as DNA Analysis Technician,

was described as a "minor" trace element of Petitioner's DNA found on alleged

victim's pubic hair combing.  During trial proceedings, C. Ben (alleged victim)

testified that she had used the bathroom facilities at Petitioner's residence.  Tara

Brown confirmed that the "minor" trace element found on Petitioner may have

been transferred during the time C. Ben used Petitioner's bathroom.  Therefore, the

only evidence deemed reliable to the prosecution's behalf was the recording that

was obtained by Sergeant O'Cull by coercion and unconstitutional duress.

      During trial, Detective Alvin Hotard and Sergeant Brian O'Cull were asked

in direct examination, **"did Defendant [Petitioner] ever ask for an attorney?"**

Understanding that if Petitioner had requested an attorney at any point prior to

obtaining the audio recording, that the recording would be subject to suppression

from both trial, officers offered perjured testimony by stating **"no"**.  The perjured

testimony is evident within the Affidavit for Search Warrant submitted by

Sergeant Brain O'Cull, which pertinently reads, **"...stating that he [petitioner]**

**Page #38**

had been down this road before and wanted an attorney" (pg. #5A para. #7 ln. #4 - #5). Petitioner argues that Prosecution entered the Affidavit For Search Warrant into trial as one of State's evidence, therefore, the prosecution knowingly accepted the perjured testimony of Detective Alvin Hotard and Sergeant Brian O'Cull into trial  in order to justify the introduction of the coerced confession obtained in direct violation of Petitioner's rights per "Miranda". **Napue v. Illinois, 360 U.S. 264 (1959.** Thus, ensuring the conviction of Petitioner.

Petitioner argues that Defense Counsel also knowingly allowed the perjured testimony of Detective Hotard and Sergeant O'Cull to be introduced into trial.  In support of argument, Petitioner submits an entry within the Court Minutes dated November 18, 2013, which reads that Defense Counsel stipulated that they were satisfied with the Discovery received by the State.  The Discovery contained a copy of the Affidavit For Search Warrant presented by Sergeant Brian O'Cull, suggesting that as Defense Counsel reviewed the contents of the Discovery in preparation to defend Petitioner in trial, they became aware that Petitioner had evoked his constitutional right to have legal counsel present during questioning. But, Defense Counsel did not make any objections to the introduction of the perjured testimony by law enforcement.  Therefore, knowingly accepting the testimony, which presented an unconstitutional violation against Petitioner's rights of fair trial.

The definition of perjury states "the willful giving of false testimony under oath".  In any instant that a member of law enforcement, whom is sworn to protect and serve, commits the act of perjury, the credibility of their testimony should be thoroughly scrutinized.  Prosecution was in fear that the prior inconsistent

statements, and the false statement of being kidnaped that the alleged victim

initially stated, would create enough doubt in the minds of the jurors, that the

perjured testimony was necessary to convince the jurors that the only piece of

evidence reliable to convict Petitioner, the coerced confession was obtained within

the legal standards of law.

     The failure of the prosecutor to correct the testimony of the witness which

he knew to be false denied Petitioner due process of law in violation of the

Fourteenth Amendment **Napue v. Illinois, 360 U.S. 265 - 272.** It is established

that a conviction obtained through use of false evidence, known to be such a

representative of the state, must fall under the Fourteen Amendment, **Mooney v.**

**Holohan, 294 U.S. 103; Pyle v. Kansas, 317 U.S. 213; Curran v. Delaware, 259**

**F.2d 707. Compare Jones v. Kentucky, 97 F.2d 335, 338 with In re Sawyer's**

**Petition, 229 F.2d 805, 809 cf. Mesarosh v. United States 352 U.S. 1. The same**

**result obtains** when the State, although not soliciting false evidence, allows it to

go uncorrected when it appears. **Alcorta v. Texas, 355 U.S. 28; United States ex**

**rel. Thompson v. Dye, 221 F. 2d 763; United States ex rel. Almeida v. Baldi,**

**195 F. 2d 815; United States ex rel. Montgomery v. Ragen, 86 F. Supp. 382.**

The same principle that a state may not knowingly use false evidence, including

false testimony, to obtain a tainted conviction, implicit in any concept of ordered

liberty, does not cease to apply merely because the false testimony goes only to the

credibility of the witness. The jury's estimate of the truthfulness and reliability of a

given witness may well be determinative of guilt or innocence, and it is upon such

subtle factors as the possible interest of the witness in testifying falsely that a

defendant's life or liberty may depend. It is of no consequence that the falsehood

bore upon the witness credibility, rather than directly upon defendant's guilt. A lie

Page #40

is a lie, no matter what it's subject, and, if it is in any way relevant to the case, the District Attorney has the responsibility and duty to correct what he knows to be false and elicit the truth... that the District Attorney's silence was not the result of guile or a desire to prejudice matters little, for it's impact was the same, preventing, as it did, a trial that could in any real sense be termed fair. **Napue v. Illinois, 360 US. 270 (1959).**