VOLUME  II

Evidence In Support Of Claims

TENDERED FOR FILING

APR 2 2 2019 DM

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

Case Number: 2012-00840

At some point during the meeting, the victim advised that "Keefer" forced her to have sex with him, however, during the act she did not believe he ejaculated. Once "Keefer" stopped raping the victim, she subsequently got dressed and told him her real age. At that time "Keefer" advised her to get into his vehicle, which she did. Once in the vehicle, "Keefer" drove to a gas station in New Orleans East, at which time the victim exited the vehicle and ran to a local hotel, where she called her mother and sister, who called the police. The Victim was then transported to Children's Hospital in New Orleans for treatment and examination.

During a sexual assault examination conducted by Children's Hospital staff doctors, it was discovered that the victim suffered obvious and significant vaginal trauma, to include a torn and bleeding hymen.

While conducting the investigation, Detective Alvin Hotard spoke to the victim's mother who was aware of a subject named "Keefer" and advised that she had seen "Keefer's" picture on the victim's phone. At that time Detective Hotard viewed the phone, which had been brought to the hospital by the victim's sister. Upon looking through the text messages listed under the contact name of "Keefer" Detective Hotard viewed a picture of the subject, which had been sent to the phone. Detective Hotard also saw a message where the sender listed the address of 1326 Hickory Street as his home.

Upon completing the preliminary investigation at the hospital, Detective Hotard proceeded to the Saint Tammany Parish Sheriff's Office Slidell Investigations Division, where he located the one individual with the first name of "Keefer" in the report management system. The individual's full name was Keefer Lamar Eaglin (B/M, 10-12-79) and he resided in the Slidell area. Detective Hotard then viewed a prior arrest photograph of the subject and it appeared to be the same individual that had sent his picture to the victim's phone under the contact name of "Keefer". Upon retrieving the name, Detective Hotard entered it into the Louisiana Justice network database and learned that one of Eaglin's listed addresses was 1326 Hickory Street, Slidell, Louisiana.

It should be noted that upon viewing Eaglin's criminal history, Detective Hotard noted that he had a prior arrest for Carnal Knowledge of a juvenile in 1998.

Based on the above details, a search warrant was obtained for Keefer Eaglin's residence of 1326 Hickory Street on January 17, 2012 and an arrest warrant was obtained for Keefer Eaglin for the offense of Forcible Rape at the same time. At approximately 0200 hours on said date the issued Search warrant was executed at 1326 Hickory Street. Upon doing such contact was established with Keefer Eaglin and he returned to the Slidell Law Enforcement complex with Detective Hotard.

After being advised of his Rights per Miranda, Keefer Eaglin provided Detective Hotard with a short account of what occurred at 1326 Hickory on January 16, 2012. Detective Hotard found Keefer's statements to be supportive of what the victim reported, acknowledging that she was present at his residence with him on said date. Keefer refused to answer any questions relative to having sexual intercourse with the victim stating "that he had been down this road before and wanted an attorney". Keefer was subsequently charged accordingly per the issued arrest warrant for the offense of forcible rape. Keefer was then transported to the St. Tammany Parish Jail by uniform personnel and booked accordingly. 

## NARRATIVE CONTINUATION

After speaking with Whitmore, Detective Smith conducted an interview Trevon Eaglin, Keefer Eaglin's thirteen year old son. From the interview Detective Smith learned that T. Eaglin was present at the residence during the time the incident took place, however he was in his room with the door closed. Upon waking he stayed in his room and played video games until sometime in the afternoon. At no time did he see his father or anyone else in the residence.

While the aforementioned scene investigation was being conducted, Detective Hotard arrived at the Slidell Law Enforcement Complex and conducted an interview with Eaglin, who had been transported.

Before Beginning the interview, Detective Hotard advised Eaglin of his rights per Miranda, as well as, his waiver of rights. Detective Hotard then allowed Eaglin to read the form, and Eaglin subsequently signed his name in both places. At that time Detective Hotard began the interview and learned the following information:

Eaglin advised that he met Ben through a website called "Tagged" and according to her profile she was nineteen years old. Upon meeting each other they chatted online for three or four days, until Sunday, January 15, 2012 when they spoke over the phone. Eaglin advised that during the conversation, they planned to meet at Eaglin's residence the following day, Monday, January 16, 2012 and Ben advised she would drive there. Eaglin further advised that sometime in the morning on Monday, January 16, 2012, Ben arrived at his residence in a cab, which he was forced to pay for because Ben had no money. Upon seeing Ben, Eaglin asked her to see some identification, because he thought she looked younger then nineteen years old. When Ben could not provide any identification, Eaglin told her to get into his car because he was going to take her back home to the Westbank of New Orleans. Upon driving there on Interstate 10, Eaglin advised he stopped at a gas station and during that time Ben ran off, but he did not know where Ben ran off to. Eaglin then drove back home. Eaglin advised that at no time did he and Ben ever engage in any type of inappropriate or sexual activities.

Upon concluding the interview, Detective Hotard completed the proper booking paperwork and Eaglin was subsequently transported to criminal patrol deputies to the Saint Tammany Parish Jail where he was booked accordingly.

On Thursday January 19, 2012 at approximately 10:51 am, Sergeant Brian O'Cull presented before Judge William Knight of the 22nd Judicial Court an affidavit for a

ADMINISTRATIVE

| Report Control No | | | | | Related Report Numbers | | |
|---|---|---|---|---|---|---|---|
| Officer(s) Reporting | ID. Number | Name | | | ID. Number | Unit | Date |
| HOTARD, ALVIN A | 1683 | | | | | 7113 | 02/15/2012 |
| Officer Reviewing (If Applicable) | ID. Number | Assigned Date | # Offenses | # Victims | # Charged | # Premises Ent. | # Vehicles Stolen | # Arrested |
| | | | 0 | 0 | 0 | 0 | 0 | 0 |
| Routed To | | Returned To | | | | | Assigned Date |
| MAJOR CRIMES | | | | | | | |
| Assigned To | | By | | | | | Date Cleared |
| Case Status | | Exception Type | | | | | |
| CLEARED BY ARREST | | | | | | | |

SUPPLEMENT - NARRATIVE CONTINUATION

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | Juvenile | 1. Original | |
| | | | | | 2. Supplement | 2 |

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2012-000840 |
| Original Date Reported | Incident Type | |
| 01/16/2012 | Rape-forcible | |

**NARRATIVE CONTINUATION**

search warrant to be issued for the collection of forensic evidence from the Body/Person of Keefer Eaglin. Judge Knight reviewed, granted, and issued said search warrant accordingly.

At approximately 2:00 pm, same date, Sergeant O'Cull and Saint Tammany Parish Coroner's Office Investigator Mike Rodrigue executed the search warrant issued for the Body/Person of Eaglin at the Saint Tammany Parish Jail, where Eaglin was incarcerated. The collection of evidence occurred in the Medical Office area of the Saint Tammany Parish Jail.

The following items were seized as evidence during the execution of said search warrant and secured accordingly as part of a forensic Sex Crimes Kit.

y -Saliva Sample
[]-Pulled Head Hairs
  -Pulled Public Hairs
h -Finger Nail Clippings
  -Two Vials of Blood

After the above items were collected, Sergeant O'Cull and Investigator Rodrigue concluded the search at approximately 2:55 pm, same date.

Upon completion of the search warrant, Eaglin informed Sergeant O'Cull that he wished to make a formal statement to Detective Hotard about the forcible rape he had been arrested for.

At that time, Sergeant O'Cull advised Eaglin of his rights per Miranda, as well as, his waiver of rights. Sergeant O'Cull then allowed Eaglin to read the from, and Eaglin subsequently signed his name in both places. At that time Sergeant O'Cull began the Recorded Interview with Eaglin. The following is a synopsis of the interview:

Eaglin stated that he met Chanel Ben three or four days prior to the incident on the Internet via a social networking site known as "TAG". Eaglin advised that plans were made for Ben to come visit him at his residence in Slidell, Louisiana on the morning of Monday January 16, 2012. Eaglin relayed that the arrangements were for he and Ben to make a whole day out of her visit.

Eaglin advised that Ben arrived at his house early on the morning of Monday

| **ADMINISTRATIVE** | | | | | | | |
|---|---|---|---|---|---|---|---|
| Report Contains | | | | Related Report Number(s) | | | |
| Officer(s) Reporting | ID. Number | Name | | | ID. Number | Unit | Date |
| HOTARD, ALVIN A | 1663 | | | | | 7113 | 02/15/2012 |
| Officer Reviewing (if Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| | | | 0 | 0 | 0 | 0 | 0 | 0 |
| Routed To | | Referred To | | | | | |
| MAJOR CRIMES | | | | | | Assigned Date | |
| Assigned To | | By | | | | | |
| | | | | | | Date Cleared | |
| Case Status | | Exception Type | | | | | |
| CLEARED BY ARREST | | | | | | | |

STATE OF LOUISIANA

NUMBER: 519994 E

VERSUS

22ND JUDICIAL DISTRICT CO

KEEFER L. ENGLIN

PARISH OF ST TAMMANY

8/13/12
Filed:

_Rachel Stan_
Deputy Clerk

## NOTICE OF APPEARANCE

The Defendant Keefer L. Englin, the captioned defendant moves the Court

take notice and allow him to enroll as co-counsel in the captioned matter. The

defendant is currently imprisoned in the Louisiana Department of Public Safety

and Corrections and has lodged a Motion for Discovery.

Respectfully,

Dated:   8-10-12

_Keefer Englin_
Keefer Englin

## CERTIFICATE OF SERVICE

The undersigned deposes and says that he has served opposing counsel of

record a true and correct copy of the same by depositing the same in the United

States Mail.

Keefer Englin

SUPPLEMENT - NARRATIVE CONTINUATION

| Agency ORI Number | Agency Name | | Agency Report Number |
|---|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | | 2012-000840 |
| Original Date Reported | Incident Type | | |
| 01/16/2012 | Rape-forcible | | |

## NARRATIVE CONTINUATION

After speaking with Whitmore, Detective Smith conducted an interview Trevon Eaglin, Keefer Eaglin's thirteen year old son. From the interview Detective Smith learned that T. Eaglin was present at the residence during the time the incident took place, however he was in his room with the door closed. Upon waking he stayed in his room and played video games until sometime in the afternoon. At no time did he see his father or anyone else in the residence.

While the aforementioned scene investigation was being conducted, Detective Hotard arrived at the Slidell Law Enforcement Complex and conducted an interview with Eaglin, who had been transported.

Before Beginning the interview, Detective Hotard advised Eaglin of his rights per Miranda, as well as, his waiver of rights. Detective Hotard then allowed Eaglin to read the form, and Eaglin subsequently signed his name in both places. At that time Detective Hotard began the interview and learned the following information:

Eaglin advised that he met Ben through a website called "Tagged" and according to her profile she was nineteen years old. Upon meeting each other they chatted online for three or four days, until Sunday, January 15, 2012 when they spoke over the phone. Eaglin advised that during the conversation, they planned to meet at Eaglin's residence the following day, Monday, January 16, 2012 and Ben advised she would drive there. Eaglin further advised that sometime in the morning on Monday, January 16, 2012, Ben arrived at his residence in a cab, which he was forced to pay for because Ben had no money. Upon seeing Ben, Eaglin asked her to see some identification, because he thought she looked younger than nineteen years old. When Ben could not provide any identification, Eaglin told her to get into his car because he was going to take her back home to the Westbank of New Orleans. Upon driving there on Interstate 10, Eaglin advised he stopped at a gas station and during that time Ben ran off, but he did not know where Ben ran off to. Eaglin than drove back home. Eaglin advised that at no time did he and Ben ever engage in any type of inappropriate or sexual activities.

Upon concluding the interview, Detective Hotard completed the proper booking paperwork, and Eaglin was subsequently transported to criminal patrol deputies to the Saint Tammany Parish Jail where he was booked accordingly.

On Thursday January 19, 2012 at approximately 10:51 am, Sergeant Brian O'Cull presented before Judge William Knight of the 22nd Judicial Court an affidavit for a

## ADMINISTRATIVE

| | | | | | Related Report Number(s) | | | |
|---|---|---|---|---|---|---|---|---|
| Report Content | | | | | | | | |
| Officer(s) Reporting | ID. Number | Name | | | ID. Number | Unit | Date | |
| HOTARD, ALVIN A | 1683 | | | | | 7113 | 02/15/2012 | |
| Officer Reviewing (if Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| | | | 0 | 0 | 0 | 0 | 0 | 0 |
| Routed To | | Returned To | | | | | Assigned Date | |
| MAJOR CRIMES | | | | | | | | |
| Assigned To | | By | | | | | Date Cleared | |
| Case Status | | Exception Type | | | | | | |
| CLEARED BY ARREST | | | | | | | | |

2-A

| | | Juvenile | | 1. Original |
|---|---|---|---|---|
| | | | | 2. Supplement 2 |

| Agency ORI Number | Agency Name | | | |
|---|---|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | | Agency Report Number | |
| Original Date Reported | Incident Type | | 2012-000840 | |
| 01/16/2012 | Rape-forcible | | | |

## NARRATIVE CONTINUATION

search warrant to be issued for the collection of forensic evidence from the Body/Person of Keefer Eaglin. Judge Knight reviewed, granted, and issued said search warrant accordingly.

At approximately 2:00 pm, same date, Sergeant O'Cull and Saint Tammany Parish Coroner's Office Investigator Mike Rodrigue executed the search warrant issued for the Body/Person of Eaglin at the Saint Tammany Parish Jail, where Eaglin was incarcerated. The collection of evidence occurred in the Medical Office area of the Saint Tammany Parish Jail.

The following items were seized as evidence during the execution of said search warrant and secured accordingly as part of a forensic Sex Crimes Kit.

    y -Saliva Sample
    0-Pulled Head Hairs
    -Pulled Pubic Hairs
    h -Finger Nail Clippings
    -Two Vials of Blood

After the above items were collected, Sergeant O'Cull and Investigator Rodrigue concluded the search at approximately 2:55 pm, same date.

Upon completion of the search warrant, Eaglin informed Sergeant O'Cull that he wished to make a formal statement to Detective Hotard about the forcible rape he had been arrested for.

At that time, Sergeant O'Cull advised Eaglin of his rights per Miranda, as well as, his waiver of rights. Sergeant O'Cull then allowed Eaglin to read the from, and Eaglin subsequently signed his name in both places. At that time Sergeant O'Cull began the Recorded interview with Eaglin. The following is a synopsis of the interview:

Eaglin stated that he met Chanel Ben three or four days prior to the incident on the Internet via a social networking site known as "TAG". Eaglin advised that plans were made for Ben to come visit him at his residence in Slidell, Louisiana on the morning of Monday January 16, 2012. Eaglin relayed that the arrangements were for he and Ben to make a whole day out of her visit.

Eaglin advised that Ben arrived at his house early on the morning of Monday

## ADMINISTRATIVE

| eport Contains | | | | Related Report Number(s) | | | | |
|---|---|---|---|---|---|---|---|---|
| icer(s) Reporting | ID. Number | Name | | | ID. Number | Unit | Date | |
| OTARD, ALVIN A | 1683 | | | | | 7113 | 02/15/2012 | |
| icer Reviewing (If Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
| | | | 0 | 0 | 0 | 0 | 0 | 0 |
| uted To | | Referred To | | | | | | |
| AJOR CRIMES | | | | | | | | |
| igned To | | By | | | | | | |
| | | | | | | | Assigned Date | |
| e Status | | Exception Type | | | | | | |
| .EARED BY ARREST | | | | | | | Date Cleared | |

## STATEMENT OF MIRANDA RIGHTS

1. You have the right to remain silent.
2. Anything you say can and will be used against you in a court of law.
3. You have the right to talk to a lawyer and have him present with you while you are being questioned.
4. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish.
5. You can decide at any time to exercise these rights and not answer any questions or make any statements.

I understand these rights

_____
Signature

### WAIVER OF RIGHTS

I have read the above statement of my rights and I understand each of those rights and having these rights in mind I waive them and willingly make a statement.

_____
Signature

Witnessed by:

_Sgt. Brian O'Neill #7103_
Officer's Name

_Investigations Division S.T.P.S.O._
Officer's Department

Date: _01/17/2012_          Time: _15:15 hrs_ M.

_01/14/2012_
DATE OF OFFENSE

Case #: _7012-000840_

Name Rights given to: _Heche R. Rayliss_

Date of birth: _12/12/1899_

Race & Sex: _B/M_

Case Number: 2012-00840

At some point during the meeting, the victim advised that "Keefer" forced her to have sex with him, however, during the act she did not believe he ejaculated. Once "Keefer" stopped raping the victim, she subsequently got dressed and told him her real age. At that time "Keefer" advised her to get into his vehicle, which she did. Once in the vehicle, "Keefer" drove to a gas station in New Orleans East, at which time the victim exited the vehicle and ran to a local hotel, where she called her mother and sister, who called the police. The Victim was then transported to Children's Hospital in New Orleans for treatment and examination.

During a sexual assault examination conducted by Children's Hospital staff doctors, it was discovered that the victim suffered obvious and significant vaginal trauma, to include a torn and bleeding hymen.

While conducting the investigation, Detective Alvin Hotard spoke to the victim's mother who was aware of a subject named "Keefer" and advised that she had seen "Keefer's" picture on the victim's phone. At that time Detective Hotard viewed the phone, which had been brought to the hospital by the victim's sister. Upon looking through the text messages listed under the contact name of "Keefer" Detective Hotard viewed a picture of the subject, which had been sent to the phone. Detective Hotard also saw a message where the sender listed the address of 1326 Hickory Street as his home.

Upon completing the preliminary investigation at the hospital, Detective Hotard proceeded to the Saint Tammany Parish Sheriff's Office Slidell Investigations Division, where he located the one individual with the first name of "Keefer" in the report management system. The individual's full name was Keefer Lamar Eaglin (B/M, 10-12-79) and he resided in the Slidell area. Detective Hotard then viewed a prior arrest photograph of the subject and it appeared to be the same individual that had sent his picture to the victim's phone under the contact name of "Keefer". Upon retrieving the name, Detective Hotard entered it into the Louisiana Justice network database and learned that one of Eaglin's listed addresses was 1326 Hickory Street, Slidell, Louisiana.

It should be noted that upon viewing Eaglin's criminal history, Detective Hotard noted that he had a prior arrest for Carnal Knowledge of a juvenile in 1998.

Based on the above details, a search warrant was obtained for Keefer Eaglin's residence of 1326 Hickory Street on January 17, 2012 and an arrest warrant was obtained for Keefer Eaglin for the offense of Forcible Rape at the same time. At approximately 0200 hours on said date the issued Search warrant was executed at 1326 Hickory Street. Upon doing such contact was established with Keefer Eaglin and he returned to the Slidell Law Enforcement complex with Detective Hotard.

After being advised of his rights per Miranda, Keefer Eaglin provided Detective Hotard with a short account of... [remainder illegible]

COMPLAINT ARREST AFFIDAVIT - NARRATIVE CONTINUATION

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2012-000840 |
| Offense Date Reported | Incident Type: | |
| 01/16/2012 | Rape-forcible | |

### NARRATIVE CONTINUATION

Street as his home.

Upon completing the preliminary investigation at the hospital, Detective Hotard proceeded to the Saint Tammany Parish Sheriff's Office Slidell Investigations Division, where he located the one individual with the first name of "Keefer" in the report management system. The individual's full name was Keefer Lamar Eaglin (B/M, 10-12-79) and he resided in the Slidell area. Detective Hotard then viewed a prior arrest photograph of the subject and it appeared to be the same individual that had sent his picture to the victim's phone under the contact name of "Keefer". Upon retrieving the name, Detective Hotard entered it into the Louisiana Justice network database and learned that one of Eaglin's listed address was 1326 Hickory Street, Slidell, Louisiana.

~It should be noted that upon viewing Kefer Eaglin's criminal history, Detective Hotard learned that Keefer had a prior arrest for Carnal Knowledge of a juvenile in 1998.

Based on the above details, a search warrant was obtained for 1326 Hickory Street and a arrest warrant was obtained for Keefer Eaglin for the offense of Forcible Rape. At approximately 0200 hours the issued Search warrant was executed at 1326 Hickory Street. Upon doing such contact was established with Keefer Eaglin and he voluntarily returned to the Slidell Law Enforcement complex with Detective Hotard.

After being advised of his Rights per Miranda, Keefer Eaglin provided Detective Hotard with a short account of what occurred at 1326 Hickory on 01/16/2012. Detective Hotard found Keefer's statements to be supportive of what the victim reported. Keefer was subsequently charged accordingly per the issued arrest warrant for the offense of forcible rape. Keefer was then transported to the St. Tammany Parish Jail by uniform personnel and booked accordingly.

No further information to report.

### ADMINISTRATIVE

| Report Censored | | | | | Related Report Number(s) | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Officer Reporting | ID. Number | Name | | | ID. Number | Unit | | Date | |
| HOTARD, ALVIN A | 1683 | | | | | 7113 | | 01/17/2012 | |
| Officer Reviewing (if applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested | |
| OCULL, Brian | 379 | 01/17/2012 | 1 | 1 | 1 | 0 | 0 | 0 | |
| Routed To | | | Referred To | | | | | | |
| CRIM RECORDS | | | | | | | | | |
| Assigned To | | | Assigned By | | | | | | Date |
| | | | | | | | | | |
| Case Status | | | Exception Type | | | | | | Date Cleared |
| CLEARED BY ARREST | | | | | | | | | |

SUPPLEMENT - NARRATIVE CONTINUATION

| | | Juvenile | 1. Original |
| | | | 2. Supplement |

| Agency ORI Number | Agency Name | Agency Report Number |
|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | 2012-000840 |

| Original Date Reported | Incident Type |
|---|---|
| 01/15/2012 | Rape-forcible |

## NARRATIVE CONTINUATION

After speaking with Whitmore, Detective Smith conducted an interview Trevon Eaglin, Keefer Eaglin's thirteen year old son. From the interview Detective Smith learned that T. Eaglin was present at the residence during the time the incident took place, however he was in his room with the door closed. Upon waking he stayed in his room and played video games until sometime in the afternoon. At no time did he see his father or anyone else in the residence.

While the aforementioned scene investigation was being conducted, Detective Hotard arrived at the Slidell Law Enforcement Complex and conducted an interview with Eaglin, who had been transported.

Before Beginning the interview, Detective Hotard advised Eaglin of his rights per Miranda, as well as, his waiver of rights. Detective Hotard then allowed Eaglin to read the form, and Eaglin subsequently signed his name in both places. At that time Detective Hotard began the interview and learned the following information:

[REDACTED]

Upon concluding the interview, Detective Hotard completed the proper booking paperwork and Eaglin was subsequently transported to criminal patrol deputies to the Saint Tammany Parish Jail where he was booked accordingly.

On Thursday January 19, 2012 at approximately 10:51 am, Sergeant Brian O'Cull presented before Judge William Knight of the 22nd Judicial Court an affidavit for a

## ADMINISTRATIVE

| Report Contains | | Related Report Number(s) |
|---|---|---|

| Officer(s) Reporting | ID. Number | Name | | ID. Number | Unit | Date |
|---|---|---|---|---|---|---|
| HOTARD, ALVIN, A | 1683 | | | | 7113 | 02/15/2012 |

| Officer Reviewing (if Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
|---|---|---|---|---|---|---|---|---|
| | | | 0 | 0 | 0 | 0 | 0 | 0 |

| Routed To | Referred To |
|---|---|
| MAJOR CRIMES | |

| Assigned To | By | Assigned Date |
|---|---|---|

| Case Status | Exception Type | Date Cleared |
|---|---|---|
| CLEARED BY ARREST | | |

5/22/2012 11:43 AM        A-21124-12-        Page 2 of 2

## NARRATIVE

ON 01-16-12, APPROXIMATELY 9:45 AM, THE REPORTING PERSON, MS. EDNA BEN, REPORTED HER DAUGHTER, CHANEL BEN, BF, 09/07/1998 MISSING OR AS A RUNAWAY, THE REPORT WAS TAKEN BY PO OFFICER D. BANKS, UNIT 421.

ON 01-16-12, APPROXIMATELY 12:15 PM, CHANEL BEN CALLED HER SISTER AND INFORMED HER THAT SHE WAS KIDNAPPED AND SHE ESCAPED FROM THE MEN WHO KIDNAPPED HER, SHE ALSO TOLD HER SISTER THAT SHE WAS AT A HOTEL AT 7001 BULLARD AVE. CHANEL BEN'S SISTER APPARENTLY NOTIFIED POLICE WHO IN TURN FURTHER THE CALL OUT FOR 7TH DISTRICT OFFICERS TO RESPOND TO. LT. GERVAIS, UNIT 710A AND DETECTIVE POWELL UNIT 171 RESPONDED TO 7001 BULLARD AND LOCATED CHANEL BEN. CHANEL BEN INFORMED THE OFFICERS THAT ON 01-16-12, APPROXIMATELY 7:00 AM SHE WENT OUTSIDE AS USUAL AND FOUND AN UNKNOWN BAG ON THE FRONT PORCH BEHIND THE FLOWER POT. CHANEL WENT ON TO SAY SHE ATTEMPTED TO OPEN THE PORCH DOOR WITH THE BAG IN HER HAND BUT THE DOOR WAS STUCK, CHANEL THEN SAID AT THAT TIME, THREE MASK MEN RAN UP TO THE PORCH, OPENED THE DOOR AND FORCED HER IN AN UNKNOWN RED CAR. NOT SOMETHING OVER HER HEAD AND DROVE HER TO AN UNKNOWN LOCATION. CHANEL STATED AFTER A WHILE SHE WAS ABLE TO ESCAPE FROM HER CAPTURES AND RUN TO THE HOTEL AT 7001 BULLARD AVENUE WHERE THE POLICE PICKED HER UP.

OFFICERS NOTIFIED THE 4TH DISTRICT THAT THE 21J. MISSING PERSON/RUNAWAY, HAD BEEN LOCATED, OFFICERS RELOCATED MS. CHANEL BEN TO THE SEVENTH DISTRICT STATION TO BE REUNITED WITH HER MOTHER, MS. EDNA BEN AND OTHER FAMILY MEMBERS. CHANEL'S FAMILY MEMBERS BEGAN TO SEARCH HER CELL PHONE AND LEARNED THAT SHE CALLED A UNITED CAB FROM HER CELL PHONE APPROXIMATELY 7:45 AM. DETECTIVE POWELL CALLED THE CAB COMPANY, 522-9771, AND LEARNED THAT CAB NO. 140 MR. ELLIOTT FLOOD, PICKED UP A FARE AT CHANEL'S RESIDENCE AT 3601 LENNOX BLVD. DETECTIVE POWELL INTERVIEWED MR. FLOOD WHO STATED HE PICKED UP A YOUNG LADY FROM 3601 LENNOX BLVD. MR. FLOOD WENT ON TO SAY THAT THE YOUNG LADY WENT ON TO SAY THAT SHE WAS GOING TO 1326 HICKORY STREET, SUDELL, LA., AND INFORMED HIM THAT SHE WENT TO BUILLARD AND UNIVERSITY AND SHE WORKED AT THE OAKWOOD MALL. MR. FLOOD SAID HE PULLED UP TO A HOUSE ON THE CORNER OF FIRST STREET OFF OF SOUTH STREET. HE ASKED THE YOUNG LADY WHO WAS SHE INTENDING TO PAY FOR THE FARE. FLOOD SAID THE YOUNG LADY SAID SHE WAS GOING TO PAY BY CREDIT CARD AND HE ASKED HER. MR. FLOOD SAID THE YOUNG LADY WAS ALREADY TALKING TO SOMEONE ON THE PHONE AND HE HEARD THE YOUNG LADY ASK THE PERSON ON THE PHONE IF THEY WERE GOING TO PAY FOR THE CAB FARE. MR. FLOOD SAID AFTER A MAN APPROACHED THE CAB, PAYED HIM $85.00 IN CASH AND THE YOUNG LADY GOT OUT OF THE CAB AND HE PULLED OFF.

DETECTIVE POWELL REINTERVIEWED MS. CHANEL BEN AND HER MOTHER AND INFORMED THEM THAT HE HAD JUST INTERVIEWED THE CAB DRIVER AND INFORMED CHANEL WHAT THE CAB DRIVER SAID. CHANEL BEN BEGAN TO CRY. CHANEL THEN ADMITTED THAT SHE HAD CAUGHT THE CAB TO A MAN'S HOUSE AT FIRST STREET. CHANEL BEN SAID SHE DID NOT DO ANYTHING. AFTER SEVERAL MINUTES OF TALKING TO CHANEL CHANEL ADMITTED THAT SHE WENT TO THE MAN'S HOUSE. SHE DID HAVE SEX WITH THE MAN, WHO SHE DID NOT OR WOULD NOT IDENTIFY AND THAT THE MAN THEN PROTECTED OR PAID FOR HER THEN BROUGHT HER BACK TO NEW ORLEANS AND DROPPED HER OFF ON BULLARD AVENUE.

DETECTIVE POWELL INFORMED MS. EDNA BEN TO TAKE HER DAUGHTER TO CHILDREN'S HOSPITAL AND DETECTIVE POWELL NOTIFIED SEX CRIMES UNIT 4553, DETECTIVE CORE (MLINS), WHO STATED TO DO A SUPPLEMENTAL AND NOTIFY ST. TAMMANY PARISH'S SEX CRIMES UNIT.

ANY ADDITIONAL INFORMATION WILL FOLLOW IN A SUPPLEMENTAL REPORT.

STATE OF LOUISIANA        NUMBER: 519994 E

VERSUS        22ND JUDICIAL DISTRICT CO

KEEFER L. ENGLIN        PARISH OF ST TAMMANY

_8/13/12_        _Rachel Shaw_
Filed:        Deputy Clerk

## NOTICE OF APPEARANCE

The Defendant Keefer L. Englin, the captioned defendant moves the Court

take notice and allow him to enroll as co-counsel in the captioned matter. The

defendant is currently imprisoned in the Louisiana Department of Public Safety

and Corrections and has lodged a Motion for Discovery.


Respectfully,        Dated:  8-10-12

_Keefer Englin_
Keefer Englin


## CERTIFICATE OF SERVICE

The undersigned deposes and says that he has served opposing counsel of

record a true and correct copy of the same by depositing the same in the United

States Mail.

Keefer Englin

Health System

August 5, 2010

Re:   Keefer Eaglin
DOB:  10/12/1979

Dear Mr. Eaglin,

Per request of your wife, this letter is a summary of your visit dated July 14, 2010.

Mr. Eaglin is a 30 year old black male who presented with a sudden onset of things appearing red in the right eye. The symptoms began suddenly on the afternoon of the day before presentation, and this was accompanied by painless blurred vision. He denies any previous episodes.

Past medical history is significant for juvenile-onset diabetes since age 6. He reported that he was followed by Dr. Nix in Opelousas until recently moving to the Slidell area. He reported his last hemoglobin A1c was around 7. He denies any prior eye trauma or surgery. He does not wear glasses. He had not had an eye exam within the past several years, despite recommendations by Dr. Nix. Medication includes insulin. There are no known drug allergies. Social history is positive for tobacco. He does drive, and works as a manager at Burger King. He denies alcohol or illicit drugs. Review of systems was positive for left lower leg edema and recent cellulitis. The review of systems was otherwise negative.

On exam, uncorrected visual acuity was 20/400 in the right eye, 20/200 in the left. Cycloplegic refraction revealed best corrected visual acuity of 20/200 in the right eye, 20/30 in the left. Pupils were unequal but round and reactive to light, with no afferent pupil defect noted. Motility was full. Applanation tonometry was 12 in the right eye, 13 in the left. Slit lamp examination of the anterior

---

Ochsner Health System, a part of Ochsner Clinic Foundation

2750 Gause Blvd • Slidell, LA 70461 • phone 985-639-3777 • fax 985-639-3725 • www.ochsner

2-I



segment was within normal limits, with clear corneas, deep and quiet anterior chambers, and no iris neovascularization. Dilated fundus examination revealed a large pre-retinal hemorrhage covering the macula in the right eye. Severe proliferative retinopathy was noted in both eyes, with early fibrosis seen nasally in the right eye. Optic nerves appeared normal, with no neovascularization and a normal cup-to-disc ratio of 0.3 bilaterally.

Mr. Eaglin was informed of the need for prompt evaluation and treatment by a retina specialist. My staff offered to set him up with an appointment at a charity clinic in either New Orleans or Houma. Mr. Eaglin responded that he had insurance and that he did not have the information with him. He was asked to bring this information to my office as soon as possible so that an appointment could be made with an Ochsner retina specialist. He did not bring this information, and my staff was unable to reach him. I called him on Friday, July 23, 2010 and he told me that he did not have insurance. I reiterated the importance of prompt follow up by a retina specialist for treatment. Phone numbers were provided for the charity clinics in New Orleans and Houma.

Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Wendy Doneyhue, M.D.

BMC 9
Rev. 2010

Bogalusa Medical Center

EAGLI.. .REEFER L
2 / M  DOB 10/12/1979  ADMDT 09/30/10
80901  HORTMAN RICH
MR# 000158648

**OUTPATIENT CLINIC VISIT RECORD**

RECEIVED
APR 17 2012

| CLINIC | | | Age | Date | | | SEX: ☐ YES ☐ NO |
|---|---|---|---|---|---|---|---|
| | ☐ Two Identifiers Used | | 30 | 9/30/10 | | | |

| MODE OF ARRIVAL | | ALLERGIES | | |
|---|---|---|---|---|
| ☐ Ambulatory | Med: | | Other: | |
| ☐ Wheelchair | | NKD | | WASHINGTON MEDICAID |
| ☐ Other _____ | Medication Record Reconciled ☐ Yes ☐ No ☐ Did not bring Meds | | | |

MEDICATION RECORD RECONCILED ☐ YES ☐ NO   ☐ DID NOT BRING MEDS

| TEMP | PULSE | RESP. | B/P | WEIGHT | HEIGHT | BMI | FOOT EX. | PULSE OX | ACCU | PAIN |
|---|---|---|---|---|---|---|---|---|---|---|
| 98' | 114 | 18 | 160/111 | 152 | 60" | 22.7 | 91/60 | | | Scale 0 / Location RT ot / Type / Duration / Relief 0 |

| GYN | Birth Control _____ | Gravida ___ | Para ___ | Ab ___ | LMP ___ | TAH ___ | SVD ___ | ☐ Post menopause |
|---|---|---|---|---|---|---|---|---|

NUTRITION  ☐ Unintentional Weight Loss > 10# in last month   ☐ Unintentional Weight Gain > 10# in last month
Special Diet: _____  If Yes, diet teaching in last year: ☐ YES  ☐ NO   Appetite: ☐ Good  ☐ Fair  ☐ Poor

FUNCTIONAL  ☐ Ambulatory  ☐ Performs ADL's independently  ☐ Walker/Cane/Prosthesis  ☐ Wheelchair  ☐ Bedridden
☐ Home O2  ☐ HH  ☐ Hospice  ☐ Agency  ☐ Other _____

ABUSE ☐ None  ☐ Complaint  ☐ Suspected   If YES, referred to: _____

LIMITATIONS/BARRIERS  ☐ Reading/Comprehension/Low Literacy
☐ None   ☐ Cultural/Religious Practices  ☐ Psychological  ☐ Financial Implications  ☐ Language Preference
☐ Physical/Cognitive  ☐ Hearing  ☐ Vision  ☐ Motivation  ☐ Other _____  ☐ Needs Interpreter

SOCIAL  Tobacco Use: ☐ Yes ☐ No   2nd Hand Smoke Exposure: ☐ Yes ☐ No   Other _____
Illegal Drug Use: ☐ Yes ☐ No   ETOH Use: ☐ Yes ☐ No   Other _____

| CANCER SCREENING FEMALE | | MALE | | IMMUNIZATIONS | |
|---|---|---|---|---|---|
| 18-39 Yearly Pap Last Ex. _/_/_ | 50+ Yearly Pap50 Last Ex. _/_/_ | 40-49 Yearly PSA Last Ex. _/_/_ | | ☐ Flu _/_/_ | ☐ T dap _/_/_ |
| 40-49 Yearly Pap Last Ex. _/_/_ | 50+ Mammo yearly Last Ex. _/_/_ | 50+ Yearly PSA Last Ex. _/_/_ | | ☐ Pneumonia _/_/_ | ☐ Hep B _/_/_ |
| 40-49 Mammo q2 yrs Last Ex. _/_/_ | 50+ Colonoscopy Last Ex. _/_/_ | 50+ Colonoscopy Last Ex. _/_/_ | | ☐ Shingles _23_ | |

NURSES NOTES: Pt w/ chronic DM. Pt has cellulitis to
(R) foot since 10/24/10.  States blind in (R) eye

BP 170/102

Nurse Signature _____  Date 9/30/10  Time 1330

**DISEASE MANAGEMENT ORDERS**

| DIABETES | ASTHMA | CHF |
|---|---|---|
| *Check your feet regularly and report any changes | *Follow your action plan | *Call your doctor if you have 3-5 lbs |
| *Monitor your blood sugar at home | ☐ ACE/ARB: ☐ Contradictions: | ☐ Education Referral | of weight gain within one week |
| ☐ Education Referral | ☐ Clinic | ☐ Education Referral |
| ☐ Diabetic Foot Clinic - Call appointment desk | ☐ ASA ___ mg every day | ☐ Beta agonist: | ☐ Clinic |
| ☐ Foot Exam | ☐ Contradictions: | ☐ Steroid: | ☐ ACE/ARB: |
| ☐ Nutrition Referral | | ☐ Not Indicated/Intermittent | ☐ Beta Blocker: |
| ☐ Eye Exam ☐ LSU ☐ Private | ☐ Labs Ordered | ☐ ACT Score _____ | ☐ Contradictions: |
| 6/14/10 | ☐ Procedures Ordered | ☐ Procedures Ordered | ☐ Labs Ordered |
| | | ☐ PFT | ☐ Procedures Ordered |

| HYPERTENSION | CKD | IMMUNIZATIONS | GENERAL | EDUCATION |
|---|---|---|---|---|
| ☐ Clinic: | ☐ Education Referral | ☐ Flu | *Do not smoke or use tobacco products | Learns Best: ☐ Visual  ☐ Hearing |
| (BP > 130/85 X 3 visits) | ☐ Basic | ☐ Pneumonia | *Avoid excessive alcohol/illegal drug use | ☐ Reading  ☐ Doing |
| ☐ Labs Ordered | ☐ Advanced | ☐ Shingles | ☐ Nutritional Referral | Plan: ☐ Read to Patient  ☐ Interpreter |
| ☐ Procedure Ordered | ☐ Clinic | ☐ Tdap | BMI ☐ < 18.5  ☐ > 30 | ☐ Audio Visual  ☐ Sign Language |
| CANCER SCREENING | ☐ Labs Ordered | ☐ Hep B | ☐ Special Diet: _____ | ☐ Instruct/Demo |
| ☐ Mammogram  ☐ PSA | ☐ Procedures Ordered | ☐ Other: | ☐ Exercise as tolerated/instructed by your doctor | ☐ Family/Member Assist |
| ☐ Colonoscopy  ☐ PAP | | | ☐ Wound Clinic | |

RETURN/APPOINTMENTS AND REFERRALS

Method of teaching: ☐ Explanation  ☐ Demonstration  ☐ Audio Visual  ☐ Handout _____  ☐ POC
Response to teaching: ☐ Return Demonstration  ☐ Verbalization  ☐ Additional Instructions Required
Comments _____

If further treatment is required prior to scheduled appointment, call your doctor's office or report to the nearest Emergency Room. Take all medications as prescribed and report all reactions (Side Effects) to my Physician. I have reviewed and understand the above instructions with the Physician and/or the nurse and I have received a copy.

| Signature of Patient or Responsible Party | Relationship (if other than patient) | Discharge Nurse/Signature | Time 1430 |
|---|---|---|---|

WHITE COPY - CHART     YELLOW COPY - MEDICAL RECORD     PINK COPY - PATIENT

LSUHSC BOGALUSA MEDICAL CENTER
433 PLAZA STREET
BOGALUSA, LOUISIANA 70427
RADIOLOGY REPORT

PATIENT NAME:  Eaglin, Keefer L
SEX:  M                              MEDICAL RECORD/X-RAY:  #158648
DOB:  10/12/1979                     TYPE:  O
BILLING ACCOUNT:  #00002223893       LOCATION:
DATE OF ADMIT:  01/20/2011
PHYSICIAN:  Richard Hortman, M.D.
DATE OF EXAM:  01/20/2011
REASON FOR PROCEDURE: Swollen left foot.
EXAMINATION DESIRED:  Left foot, three views

LEFT FOOT, THREE VIEWS:

FINDINGS:
The patient has a fracture through the calcaneus.  The fracture is
vertical.  This does not appear acute.  The bone is severely
osteopenic.  There are degenerative changes in the mid foot.

IMPRESSION:
Calcaneus fracture that does not appear acute.  Would recommend
clinical correlation.

NOTE:  Dr. Hortman was paged with these results at the time of the
study.

*referral sent asap* *[signature]*

ALLEN LACOUR, M.D.
RADIOLOGIST

cc:  Richard Hortman, M.D.
AL/eg
DD:  01/20/2011 03:58 P          *[handwritten: A TH - 1/22/1]*
DT:  01/20/2011 05:16 P
JOB:  #81

Page 1 of 1
Copy for Richard Hortman, M.D.

EAGLIN ,KEEFER L
2/ M  DOB 10/12/1979   ADMDT 07/12/...
57227   OSULLIVAN PA   FC 8
MR# 000158648 PT#      2302217

REF. DR.:
Age: 3 /
Eye Meds:
ROS:
PFSH:
Med Reconciled ☑ yes ☐ no
listed

CC: IVFA today , Retina ASAP

Alleg: NKA

| VA (SC) | Right Eye 20/HM N J | | VA cc | Right Eye N J |
|---|---|---|---|---|
| | Left Eye 20/125 J | | | Left Eye |

Present glasses  R   L

| lids | R nl | ab | L nl | ab |
|---|---|---|---|---|
| lacrimal glands | | | | |
| lacrimal drainage | | | | |
| orbits | | | | |
| preauricular lymph nodes | | | | |

| | nl | ab |
|---|---|---|
| pupils | | |
| EOM | | |
| CF | | |

Tonometry
A  R   time 9:53  date 7/12/11
P  L
tech initial  AP

| | T | P | R | BP |
|---|---|---|---|---|
| | 98 | 103 | 16 | 130/83 |

SLE   Both Eyes,  Right Eye,  Left Eye

| Conjunctiva: bulbar | nl | ab |
|---|---|---|
| palpebral | | |
| Cornea: epithelium | | |
| stroma | | |
| endothelium | | |
| tear film | | |
| Anterior Chamber: depth | | |
| cell | | |
| flare | | |
| Iris: size | | |
| shape | | |
| direct & cons. reaction | | |
| morphology | | |
| Lens: Clarity | | |
| ant. & post. capsule | | |
| cortex | | |
| nucleus | | |
| Optic Disc: size | | |
| C/D ratio | | |
| appearance | | |
| nerve fiber layer | | |
| Vitreous | | |
| Retina: macula | | |
| vessels | | |
| periphery | | |

Level of pain: 0  1  2  3  (Mild)  4  5  6  (Mod)  7  8  9  10 (Severe)

IMPRESSION:

RECOMMENDATION:

EAGLIN ,KEEFER L
2/ M  DOB 10/12/1979   ADMDT 07/12/11
57227   OSULLIVAN PA   FC 8
MR# 000158648 PT#      2302217

000158648

RV: Days _____  Wks. 2  Months _____  Yrs. _____
Nurse initial _____
Physician's Signature
Date/Time 7/12/11   12:21

BMC 11 (Rev 05/10)   WHITE =Original   YELLOW = Billing   PINK = Shadow Chart

# LOUISIANA STATE UNIVERSITY
## Ophthalmic Clinic

Keefer Eaglin
MR# 158648
Physician: O'Sullivan

7/12/201
Photographer: BWI



OIS WinStation XP

12 Willis Ave
ogalusa, LA 70427

Phone: (985) 730-2145
FAX: (985) 730-2142

# LOUISIANA STATE UNIVERSITY
## Ophthalmic Clinic

Keefer Eaglin
MR# 158648
Physician: O'Sullivan

7/12/2011
Photographer: BWE



OIS WinStation XP

712 Willis Ave
Bogalusa, LA 70427

Phone: (985) 730-2145
FAX: (985) 730-2142

EAGLIN ,KEEFER L
2/ M DOB 10/12/1979    ADMDT 07/12/11
57227  OSULLIVAN PA    FC B
MR# 00015864B PT#      2302217

Increase in eye pressure (glaucoma)    Need for surgery inside of the e...    treatment to correct clouding of vision

bleeding
↓ VA
↓ VF.

Infection
Sudden
blindness

pain

### Additional Risks [illegible]

### Risks [illegible] Procedure, including Anesthesia

- death
- brain damage
- disfiguring scars
- pain

- quadriplegia (paralysis from the neck down)
- paraplegia (paralysis from the waist down)

- the loss of or loss of function of any organ or limb
- infection
- bleeding

### 5. Reasonable Therapeutic Alternatives [illegible]

### 6. Acknowledgment, Authorization and Consent

a) No Guaranties: All information given me and, in particular, all estimates made as to the likelihood of occurrence of risks of this or alternate procedures or as to the prospects of success, are made in the best professional judgement of my physician. The possibility and nature of complications cannot always be accurately anticipated and, therefore, there is and can be no guarantee, either express or implied, as to the success or other results of the medical treatment or surgical procedure.

b) Additional Information: Nothing has been said to me, no information has been given to me, and I have not relied upon any information that is inconsistent with the information set forth in this document.

c) Particular Concerns: I have had an opportunity to disclose to and discuss with the physician providing such information, those risks or other potential consequences of the medical treatment or surgical procedure that are of particular concern to me.

d) Questions: I have had an opportunity to ask, and I have asked, any questions I may have about the information in this document and any other questions I have about the proposed treatment or procedure, and all such questions were answered in a satisfactory manner.

e) Authorized Physician: The physician (or physician group) authorized to administer or perform the medical treatment, surgical procedures or other therapy in item 2 is _____

☑ LSUHSC, Dept. of _____

☐ Tulane University HSC, Dept. of _____

HCSD-190 GPNT (Rev 6/05)

2-P



```
EAGLIN ,KEEFER L
2/ M  DOB  07/12/1979    ACMDT  07/12/11
S7227   OSULLIVAN PA      FC  8
MR# 000158648 PT#         2302217
```

 Health Sciences Center

Patient Consent to Medical Treatment or Surgical Procedure and
Acknowledgement of Receipt of Medical Information
General Angiography

**READ THIS DOCUMENT CAREFULLY BEFORE SIGNING**

TO THE PATIENT:

- You have been told that you should consider medical treatment/surgery. Louisiana law requires us to tell you
  - The nature of your condition
  - The general nature of the medical treatment /surgery
  - The risks of the proposed treatment/surgery, as defined by the Louisiana Medical Disclosure Panel or as determined by your doctor, and
  - Reasonable therapeutic alternatives and material risks associated with such alternatives.
- You have the right, as a patient, to be informed about your condition and the recommended surgical, medical or diagnostic procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved.
- In keeping with the Louisiana law of informed consent, you are being asked to sign a confirmation that we have discussed all these matters. We have already discussed with you the common problems and risks. We wish to inform you as completely as possible. Please read the form carefully. Ask about anything you do not understand and we will be happy to explain it.

**1. Patient Name:**

**2. Treatment/Procedure: General Angiography**

   a) Description, nature of the treatment/procedure:

   ☐ Left   ☐ Right  Flouroscein angiography of the eye

   b) Purpose: to image circulation in the eye

**3. Patient Condition**

- Patient's diagnosis, description of the nature of the condition or ailment for which the medical treatment, surgical procedure or other therapy described in item number 2 is indicated and recommended:

   retinal lesion

**4. Material Risks of Treatment/Procedure**

- a) All medical or surgical treatment involves risks. Listed below are those risks associated with this procedure that we believe a reasonable person in your (the patient's) position would likely consider significant when deciding whether to have or forego the proposed therapy. Please ask your physician if you would like additional information regarding the nature or consequences of these risks, their likelihood of occurrence, or other associated risks that you might consider significant but may not be listed below.

Page 1 of 3

HCSD 6010 CAR (Rev 2/04)

EAGLIN ,KEEFER L
2/ M  DOB 10/12/1979  ADMDT
50803  BERGSMA DONA   FC 8
MR# UOO15864B PT#    2308478

REF. DR.:
Age: 31
Eye Meds:
ROS: LM
PFSH:
Med Reconciled ☒ yes ☐ no

cc: presents for PRP 1x today

Alleg: NKDA



VA (sc)  Right Eye 20/HM  N  J
         Left Eye 20/125  N  J

VA (cc)  Right Eye   N  J
         Left Eye    N  J

Present R  glasses L

M R L

Tonometry
A   R
P   L
time 815 date 7/26/11
tech initial AP

| | T | P | R | BP |
|---|---|---|---|---|
| | 975 | 102 | 17 | 161/89 |

Level of pain: (0) 1 2 3 4 5 6 7 8 9 10
(Mild)  (Mod)  (Severe)

Conjunctiva: bulbar  Quiet ou
Cornea: epithelium  Clear ou
Anterior Chamber: depth  D + Q ou

Patient has no transportation - Hdp.
He drove himself here.

Pre retina hem

TRD
NOT DILATED
NO DRIVER

NVD.

regressed
NVD

IMPRESSION: 31 yo AAM c
① 100m c PDR OU s/p PRP x 1 OS 7/12/11

RECOMMENDATION:
① Control BP/BS
② Plan PRP OD Friday 7/29/11
pt to come c driver
③ Discussed driving 2° to
④ Refer to Endo for LSU

will need
5x OD c PRP

EAGLIN ,KEEFER L
2/ M  DOB 10/12/1979  ADMDT 07/26/11
50803  BERGSMA DONA   FC 8
MR# 00015864B PT#   2308478

000158648

RV: Days  Wks.  Months  poo yrs.
Nurse initial AP
Physician's Signature  Pham
Date/Time 7/26/11  85°

BMC 11 (Rev 05/10)   WHITE = Original   YELLOW = Billing   PINK = Shadow Chart

> 7/29/11
1pm



EAGLIN ,KEEFER L
2/ M  DOB  10/12/1979    ADMDT  07/29
50803    BERGSMA DONA    FC 8
MR# 00O 158648 PT#     2309487

RE.. DR.:
Age:
Eye Meds:            RECEIVED
ROS:
PFSH:                APR 17 2012
Med Recond           WASHINGTON MEDICAID

cc:

Alleg:

VA ‾SC   Right Eye CF @ 4ft   N  J
         Left Eye 20/100       N  J

VA ‾CC   Right Eye            N  J
         Left Eye             N  J

Present  R                PH 20/60 -2      M  R
glasses  L                                    L              14

lids        R    ab    L    ab          ni | ab   Topometry      12
lacrimal glands                        pupils              time      date
lacrimal drainage                      EOM        A  P  R
orbits                                 CF         tech initial
preauricular lymph
nodes

SLE   Both Eyes.  Right Eye.  Left Eye        T     P     R     BP

Conjunctiva:  bulbar        ab
              palpebral                Level of pain: 0  1  2  3   4  5  6  7   8  9  10
Cornea: V epithelium  CLEAR OU                          (Mild)    (Mod)    (Severe)
        stroma
        epdothelium
        tear film
Anterior Chamber:  depth    D/F OU
                   cell
                   flare
iris:  size  shape  direct & cons. reaction  BNVI OU
       morphology
Lens:  clarity    + NS OU
       ant.& post. capsule
       cortex
       nucleus
Optic Disc:  size
             C/D ratio
             appearance
             nerve fiber layer
Vitreous:
Retina:  macula
         vessels
         periphery

IMPRESSION: 31 y/o  AAM c̄
v̄       ① PDR OU c̄ TRD OD

RECOMMENDATION:   - PRP OD today
v̄                - PF QID OD x 7 days
                 - RTC Aug 9th.

EAGLIN ,KEEFER L
2/ M  DOB  10/12/1979    ADMDT  07/29/11
50803   BERGSMA DONA    FC 8
MR# 000158648 PT#     2309487

RV: Days ___ Wks. ___ Months ___ Yrs. ___
Nurse initial ___  Aug. 9th    Physician's Signature
BMC 11 (Rev 05/10)              Date/Time  7/29/11   1530

WHITE = Original    YELLOW = Billing    PINK = Shadow Chart

# *INTERNAL MEDICINE ASSOCIATES*

### *OF NEW ORLEANS, LLC*

*618 North Carrollton Avenue*
*New Orleans, La. 70119*
*504-486-4201*
*Fax 504-488-9659*

August 16, 2011

C. Shaffer
Disability Determinations
P.O. Box 5916
Metairie, Louisiana 70009

Re:  Keefer Lamar Eaglin
SS#: 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

Dear Mr. / Mrs. Shaffer:

I had the opportunity to evaluate the above named patient in my office on 08-02-0211.  The patient's major complaints are high blood pressure, diabetes and blurred vision.

HISTORY OF PRESENT ILLNESS: The patient is a 31-year-old black male with type I insulin dependant diabetes since the age of 8. He says that he is on high blood pressure medications since January of this year,. He is not aware of any kidney problems. He was hospitalized for cellulitis of the left lower leg in July of last year and says that he still has some pain and swelling in the left lower leg with prolonged standing and walking.

The patient also says that he started experiencing blurred vision in the right eye last year. According to the records from Ochsner he was seen by an eye doctor there on July 14th of 2010 for sudden onset of seeing red in the right eye and painless blurred vision. The uncorrected visual acuity was 20/400 in the right eye and 20/200 in the left eye. The best corrected visual acuity was 20/200 on the right and 20/30 on the left. He had normal intraocular pressures. He was found to have a large pre-retinal hemorrhage covering the macular in the right eye as well as proliferative retinopathy of both eyes with early fibrosis seen in the right eye. The patient did not have follow-up at that time due to lack of insurance. He was referred to LSU in New Orleans. There is one ophthalmology clinic note from July 12th of this year when apparently the patient had no vision in the right eye and uncorrected visual acuity of the left eye was 20/125. The patient says that he has had two lazer surgeries on the left eye and one on the right eye and will have another one done on August 9th. He says that he still can only see light and shape with the right eye.

Re:  Keefer Lamar Eaglin
SS#:  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

MEDICATIONS:  The patient is presently taking Lisinopril HCTZ 20/12.5 mg, once a day, Ibuprofen 800 mg, twice a day, Novolin 20 units in the morning and 15 units at night and Prednisolone Forte eye drops four times a day in the right eye.

PAST HISTORY:  The patient has had no major surgeries. He says that he broke his collarbone and left heel in a car accident in 2001 and also had back injury. He is not allergic to any medications.

PERSONAL AND SOCIAL HISTORY:  The patient is right-handed and completed 12th grade. He worked as a restaurant manager until last year when he developed cellulitis in the left lower leg. He denies the use of alcohol and drugs. She smokes two or three cigarettes a day since 1997. He is now married for a year and he is the father of three children ages 14, 13 and 8.

### REVIEW OF SYSTEMS

General:  The patient denies frequent headaches, frequent fatigue, and lightheadedness.

Central Nervous System:  The patient denies syncope, convulsions, paralysis and involuntary movements and disorders of coordination. There are no problems with speech or memory.

Psychological:  The patient denies suicidal ideation, paranoid ideation or hallucinations.

Eyes:  See present illness.

Ears:  The patient has no complaints.

Nose & Sinuses:  The patient has no complaints.

Larynx & Pharynx:  The patient has no complaints.

Mouth:  The patient has no complaints.

Cardiovascular & Respiratory:  The patient denies chronic cough and expectoration as well as wheezing, palpitations, claudications and chest pain.  The patient denies orthopnea and paroxysmal nocturnal dyspnea.

Gastrointestinal:  The patient has no complaints.

Genitourinary:  The patient has no complaints.

Skeletal & Muscular:  See present illness. Medical records show that an x-ray done in January of this year showed an old fracture of the left calcaneous with some osteopenia.

2

Re:  Keefer Lamar Eaglin
SS#:  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

Skin & Hair: The patient has noted no changes.

## PHYSICAL EXAMINATION

The patient is a slender male who ambulates without difficulty, without a limp or use of a cane.

| | |
|---|---|
| Height: | 63" tall without shoes |
| Weight: | 132 lbs in street clothing |
| Temperature: | 98.6 F |
| Pulse: | 80 and regular |
| Respirations: | 16 per minute |
| Blood Pressure: | 156/92, left arm, standard cuff |

Eyes:  Pupils are equal, round, and react to light and accommodation.  Funduscopic examination was not done because of the availability of medical records. The patient's uncorrected visual acuity is 20/125 on the left. The patient says that the vision is blurred on the right. He can see light and shapes of objects.

Ears:  The patient hears normal conversation without any difficulty.

Nose:  No abnormalities are noted.

Mouth:  No abnormalities are noted.

Larynx & Pharynx: No abnormalities are noted.

Neck:  There is no enlargement of the thyroid gland and no enlarged cervical lymph nodes or cervical masses.  No abnormal pulsations or bruits are noted.

Chest:  The chest is symmetrical in configuration and both hemi diaphragms move equally on inspiration and expiration. The lungs are clear to auscultation and percussion with normal breath sounds bilaterally. There are no wheezes, rhonchi or rales.

Spine and Back: The patient ambulates without self support. He has normal range of motion. He can walk on heels and toes and squat more than 2/3 of the way down and rise without support. The straight leg raise test was negative bilaterally.

Cardiovascular:  The PMI is in the 5th left intercostal space, in the midclavicular line.  The borders of cardiac dullness are within normal limits.  First and second heart sounds are normal. There are no third or fourth heart sounds.  No murmurs, shocks, thrills, gallops or clicks are appreciated.

3

4

Re:  Keefer Lamar Eaglin
SS#:  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

<u>Arteries & Veins</u>: There is no edema or color changes of the lower extremities.

<u>Breasts</u>:  No abnormalities are noted.

<u>Lymphatics</u>:  No abnormalities are noted.

<u>Abdomen</u>:  The abdomen is soft and nondistended without abnormal pulsations or bruits.  There is no abdominal hernia, organomegaly or mass.

<u>Genitourinary</u>:  No abnormalities are noted.

<u>Rectal</u>:  Not performed.

<u>Extremities</u>:  There is a tiny abrasion on the medial aspect of the left ankle just below the medial malleolus which appears to be from friction from a shoe. He has symmetrical circumferences of the ankles and calves.

<u>Skin & Mucous Membranes</u>: No abnormalities are noted.

<u>Hair and Nails</u>: No abnormalities are noted.

<u>Neurological</u>:  Cranial nerves II-XII are intact bilaterally.  Muscle bulk, tone and strength are preserved in all four extremities.  The patient has normal grip strength, grasping and dexterity bilaterally. All modalities of sensation are intact and there are no abnormalities of coordination or involuntary movements.  Superficial reflexes are intact.  The deep tendon reflexes are intact. There are no pathological reflexes. Romberg was negative and cerebellar examination is normal. The patients gait is normal.

<u>Mental Status</u>: The patient exhibits normal understanding, cooperation, concentration, attention and memory. The personality estimate seems to be within normal limits. There is no visible nervousness or depressed mood.

### ADDITIONAL MEDICAL INFORMATION
Medical records were received and reviewed.

*Medical Assessment for is attached.*

### DIAGNOSES

1. Type I diabetes since the age of 8.
2. Diabetic proliferative retinopathy. The patient has had lazer procedures on both eyes and is anticipating another one on the right eye later this month.
3. History of cellulitis left lower leg last year. Resolved.

4

Re:   Keefer Lamar Eagl...
SS#:   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

## SUMMARY

The patient is a 31-year-old male   with history as in present illness. He has not worked since he was treated for cellulitis in the left lower leg in the summer of 2010. He is currently being treated for diabetic retinopathy. According to the records from Ochsner from July of last year he also had a large pre-retinal hemorrhage covering the macula in the right eye which caused sudden loss of vision in the right eye last year. He has had two lazer surgeries one in the right and two on the left and is going to have another one on the right eye on August 9th. Visual acuity uncorrected on the left side is 20/125. He can see light and shapes and shadows of objects with the right eye. The rest of his physical exam is completely unremarkable except his blood pressure of 156/92. The patient can perform all physical activities without restrictions. He should not operate machinery or motor vehicles or on unprotected heights because of the current vision problems. This should be reevaluated after he has completed the treatment and achieved the best possible result.

Thank you for referring this patient to me.

Sincerely,

Miljana Mandich, M.D.
Louisiana License No. 14385
Expiration Date: June 3, 2012

MM/jam

5

## VII. ENVIRONMENTAL LIMITATIONS

How often can the individual tolerate exposure to the following conditions:

| Condition | Never | Occasionally (up to 1/3) | Frequently (1/3 to 2/3) | Continuously (over 2/3) |
|---|---|---|---|---|
| Unprotected Heights | ✓ | | | |
| Moving Mechanical Parts | ✓ | | | |
| Operating a motor vehicle | ✓ | | | |
| Humidity and wetness | | | ✓ | |
| Dust, odors, fumes and pulmonary irritants | | | ✓ | |
| Extreme cold | | | ✓ | |
| Extreme heat | | | ✓ | |
| Vibrations | | | ✓ | |
| Other: (identify) | | | | |

| Condition | Quiet (Library) | Moderate (Office) | Loud (Heavy Traffic) | Very Loud (Jackhammer) |
|---|---|---|---|---|
| Noise | | | ✓ | |

Identify the particular medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain etc.) which support your assessment or any limitations and why the findings support the assessment.

Vision problems — see report

Form HA-1151-BK (06-2008)   sl (6-2008)
Destroy Prior Editions

Page 5 of 7

LSU Hospitals Write legibly

## Offender Collaborative Care Communication Form
## Summary of Care and Recommendations
To be completed on all offender LSU Health System visits in addition to the medical record. Place a copy in the medical record.
Guard is to take this completed form to their facility. Do not inform offender of follow up dates or times.



Acct. #10531933
LMRN: 98334594
EAGLIN, KEEFER L
10/12/1979          1/26/2012
                         2   M   J
                    /

Place label inside dotted box above or fill out info

All follow up requests are reviewed for effectiveness and are to be scheduled by either the CPSO or the hospital's scheduling office.

LSU HCSD Clinic/Specialty: _____ ED _____  OFFENDER FACILITY (REQUIRED): _____

**EVALUATION**

Reason for Specialty Consult/Visit: Retinal detachment

Pertinent History and Physical Exam: Vision problems for the past year, missed his appt. No new changes.

Pertinent Study Results: _____

Medical Decision Making and Treatment Provided: Seen by ophthalmology, will follow up as outpt.

Impression:

**RECOMMENDATIONS/PLAN**
Note that you are making recommendations to medical personnel at the Offender's facility who will care for the patient.

Recommended Medications: <u>All pain management will be prescribed by the offender's facility. DO NOT prescribe pain medications.</u>

Recommended Treatment:
- Bedrest with head of bed elevated @ 30°
- Limited activity
- Home diabetic meds
- See prison MD in the am.

Recommended Tests/Studies:                        Indication:

☐ Specialty follow up is not needed. Medical personnel at the offender's facility can provide care for the patient.

☑ Specialty follow up **may be/is** needed for: Lord & Taylor Optha clinic on 1/27/12 @ 8AM,
(circle one)

In **less/greater** than two weeks at: clinic: _____        hospital: _____
(circle one)                                        Telemedicine will be scheduled if appropriate and available.

LSU PROVIDERS: Do not schedule offender follow-up. The offender's healthcare provider at their facility must request ALL follow-up, if needed.

LSU Provider's Signature: _____        Print Name: Jam Allen

ID Number: 54007        Today's Date: 1/26/12        Time: 11:45 am

---

**If follow up is needed, THIS SECTION <u>MUST</u> BE COMPLETED BY JAIL / PRISON:**
For Eceptionist users: Complete this bottom section and fax with barcode cover page to 504-568-3360.
Fax users, fax to hospital fax numbers: Bogalusa Medical Center 504-680-0711   Earl K Long   504-680-0712   ILH/MCL (New Orleans) 504-680-0262
Lallie A Kemp 504-680-0713      Leonard J Chabert 504-680-0714      University MC (Lafayette) 504-680-0715      William O Moss 504-680-0716
→ A follow up consult is requested because: _____
→ List completed tests/studies/treatments and results: _____
Prison Provider's Signature: _____        Print Name: _____        Date: _____
Offender Facility: _____        Anticipated release date is **less/greater** than 3 months.
                                                        (circle one)

4/04/2011 HCSD ICF 926

2-Z

CC:

PFSH:
Med Reconciled ☐ yes ☐ no

Alleg:

VA ___ SC  Right Eye    N  J
            Left Eye        J

VA ___ CC  Right Eye    N  J
            Left Eye        J

Present  R
glasses  L

|  | R |  | L |  |
|---|---|---|---|---|
|  | nl | ab | nl | ab |
| lids |  |  |  |  |
| lacrimal glands |  |  |  |  |
| lacrimal drainage |  |  |  |  |
| orbits |  |  |  |  |
| preauricular lymph nodes |  |  |  |  |

|  | nl | ab |
|---|---|---|
| pupils |  |  |
| EOM |  |  |
| CF |  |  |

Tonometry
A  R
P  L          time        date

tech initial ___

|  | T | P | R | BP |
|---|---|---|---|---|

SLE  Both Eyes, Right Eye, Left Eye

|  | nl | ab |
|---|---|---|
| Conjunctiva: bulbar |  |  |
| palpebral |  |  |
| Cornea: epithelium |  |  |
| stroma |  |  |
| endothelium |  |  |
| tear film |  |  |
| Anterior Chamber: depth |  |  |
| cell |  |  |
| flere |  |  |
| Iris: size |  |  |
| shape |  |  |
| direct & cons. reaction |  |  |
| morphology |  |  |
| Lens: Clarity |  |  |
| ant. & post. capsule |  |  |
| cortex |  |  |
| nucleus |  |  |
| Optic Disc: size |  |  |
| C/D ratio |  |  |
| appearance |  |  |
| nerve fiber layer |  |  |
| Vitreous |  |  |
| Retina: macula |  |  |
| vessels |  |  |
| periphery |  |  |

Level of pain: 0  1  2  3  4  5  6  7  8  9  10
                    (Mild)    (Mod)    (Severe)

IMPRESSION:
V

RECOMMENDATION:
V

EAGLIN , KEEFER L
2/ M  DOB  10/12/1979    ADMDT 02/14/12
57227   OSULLIVAN PA   FC J
MR# 000158648  PT#       2408270

000158648

RV: Days ___ Wks. ___ Months ___ Yrs. ___
Nurse Initial ___
Physician's Signature ___
Date/Time ___

BMC 11 (Rev 05/10)

WHITE = Original     YELLOW = Billing     PINK = Shadow Chart

| Agency ORI: LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | INMATE NUMBER 121586 | | |
| | 1200 CHAMPAGNE ST , LA,70433 | 3260 | Juvenile ☐ | Prior Agency/ Inmate ☐ |
| Phone  9858982320 | FIRST APPEARANCE BOOKING REPORT | | | |

**INMATE**

| Arresting Agency ORI LA0520000 | 164969 | ST TAMMANY PARISH SHERIFF'S OFFICE | | Booking Agency ORI LA0520000 |
| Arrested Date 01/17/2012 | Arrest Time 04:50 | Arrested By ID | Arrested By Agency / Other STPSO | Related Report Number 50291972 | Booked Date 01/17/2012 | Booked Time 04:50 |

| Name (First Middle Last if only) KEEFER LAMAR EAGLIN | | | | Division Name | Social Security Number 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 | Juvenile NO |
| Organization Score 3038 | Billing Code Parish Prisoner | Division Division E | Place of Birth COLUMBIA | | Residence Phone (985) 7688800 | |
| Address (Street, Apt, Number) 1328 HICKORY STREET | | City Slidell | | State La | Zip 70460- | Business Phone (0) |
| Manager | | | | | Full Year | |
| Driver's License or Other ID (State + Number) La  6955178 | | Year Expires | Immigration and Naturalization Number | 0818 Number (Arrested) | FBI/CNIC | |
| Race Black | Religion Catholic | Date of Birth 10/12/1979 | Age 32 | Marital Status Married | Height (Weight) 504 | Weight 130 | Eye Color Brown | Hair Color Black | Hair Length Short | Complexion Straight |
| Sex Male | Complexion Dark | Build Slender | Facial Hair Goatee | | | Teeth Good | | Speech / Voice Normal | |
| Current Cell C BUILDING-DORM C200-BED C205 | | | | | | | | | |

**OFFENSE(S) / CHARGE(S)**

| Offense # 1 | Offense Type FELONY | Description FORCIBLE RAPE | | Offense Status COMMITTED | Count 1 | Statute Violation Number 14:42.1 |
| Original Offense Ind. 1 | | Related Offense Description | | Related Statute Number | | Domestic Violence? NO |
| Warrant# 201200840 | Bond Type Cash Propert Suraty | | Bond Amount 100,000.00 | Alternative Bond Type | | Alternative Bond Amount 0.00 |

EPS

72-57194.

**ADMINISTRATIVE**

Comments: CoNd: No Contact w/ victim

P.O.O

COPY

**FILED**

STATE OF LOUISIANA          JAN 2 7 2012    NUMBER: 72-57194 DIV: E

VERSUS          MALISE PRIETO-CLERK 22nd JUDICIAL DISTRICT COURT
          Deputy ... KAREN SADOWSKI

KEEFER LAMAR EAGLIN          PARISH OF ST. TAMMANY

### APPLICATION FOR REDUCTION OF BAIL

Now into court, comes defendant herein through undersigned counsel. Defendant has

been in continuous custody in the St. Tammany parish jail since January 17, 2012, having been

arrested for allegedly violating the following law/s to wit:

CT 1- R.S. 14:42.1, FORCIBLE RAPE, a felony,

Bond is set at one hundred thousand dollars, $100,000 CPS.

The accused respectfully maintains that the bond is and beyond his/her ability to furnish,

thus depriving him/her of legal rights to which he/she is entitled pursuant to the Louisiana

Constitution and C. Cr. P. Arts.311 through 343.

Respectfully submitted,

*Kevin Landry 21720*

JOHN W. HOGUE III BAR #20864
ASSISTANT PUBLIC DEFENDER
402 NORTH JEFFERSON ST.
COVINGTON, LA. 70433
TELEPHONE: (985) 892-5002

### O R D E R

Considering the foregoing motion:

IT IS ORDERED that State of Louisiana show cause on_____ day of _____,

2012 why bond should not be set for the above defendant in a reasonable sum and in accordance

to his ability to pay.

Covington, Louisiana, this ____ day of _____, 2012.

_____
J U D G E

CERTIFICATE OF SERVICE

I hereby certify that I have forwarded a copy of the foregoing motion to the District Attorney for the Parish of St.
Tammany either by hand delivery, facsimile, through the St. Tammany Parish Clerk of Court, or by U.S. mail, first-
class postage prepaid and properly addressed, this _07_ day of January, 2012.

*Shannon Donnelly*

3-B



*Malise Prieto*
Clerk of Court
22nd Judicial District
Parish of St. Tammany

P. O. Box 1090
Covington, LA  70434
(985) 809-8700

JANUARY 30, 2012

## NOTICE OF ASSIGNMENT

JOHN W HOGUE, III
ASSISTANT PUBLIC DEFENDER
402 N. JEFFERSON STREET
COVINGTON, LA 70433

DIVISION "E"
Re: STATE OF LOUISIANA
VS. #72-57194
KEEFER LAMAR EAGLIN

Dear Sir/Madam:

Please be advised that the following motions in the above captioned matter have been assigned for hearing at 9:00 A.M., on FEBRUARY 3, 2012, with Judge WILLIAM J. BURRIS presiding.

APPLICATION FOR REDUCTION OF BAIL

If you desire subpoenas issued in this matter, please file your written request with the Clerk of Court's Office immediately.  If you have any questions regarding this matter, please contact me at 985-809-8767.

Yours very truly,

*Sherri L. Viviano*

SHERRI L. VIVIANO
Deputy Clerk

cc: District Attorney

Thursday, August 22, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT,  PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E", BRUCE DEARING, ASSISTANT DISTRICT ATTORNEY,  RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT.  (Bailiff,  Richard Hunt and Jonathan Ezell;  Court Reporter, Theresa Trapani)

519994              STATE OF LOUISIANA
                    VS
                    KEEFER LAMAR EAGLIN

       The defendant not being present in open Court but represented by his Counsel, Amanda Trosclair and this matter being on assignment for **Felony Jury Trial and hearing of Motion for Bill of Particulars and Discovery (Pro Se) and States Motion for Discovery**, Court ordered for this matter be continued to **SEPTEMBER 23, 2013**.

       Further, this matter being on assignment for hearing of **Motion for Preliminary Examination (PDO), Supplemental Request and Motion for Discovery Disclosure and Inspection, Motion to Quash Bill of Information (Pro Se), and Motion for Preliminary Hearing (Pro Se)**, Court ordered for this matter be continued to **SEPTEMBER 9, 2013.**

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

3-D

Monday, September 9, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E"; BRUCE DEARING AND NICK NOREIA, ASSISTANT DISTRICT ATTORNEYS; RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiffs, Paul Tullier; Court Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN

The defendant not being present in open Court but represented by his Counsel, Amanda Trosclair and this matter being on assignment for **hearing of Motion for Preliminary Examination (PDO), Supplemental Request and Motion for Discovery Disclosure and Inspection, Motion to Quash Bill of Information (Pro Se), Motion for Preliminary Hearing (Pro Se) , Motion to Suppress Statement and Motion to Suppress Evidence**, no action taken on these motions, Court ordered for this matter be continued to **SEPTEMBER 23, 2013.**

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

3-E

Wednesday, September 25, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING; HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E"; BRUCE DEARING, ASSISTANT DISTRICT ATTORNEYS; RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiffs, Paul Tullier ; Court Reporter, Theresa Trapani)

519994             STATE OF LOUISIANA
                   VS
                   KEEFER LAMAR EAGLIN

The defendant not being present in open Court but represented by his Counsel, Amanda Trosclair and this matter being on assignment for **Felony Jury Trial and hearing of Motion for Bill of Particulars and Discovery (Pro Se) and States Motion for Discovery**, on motion of the Defense, Court ordered for this matter be continued to **NOVEMBER 18, 2013.**

Also, this matter being on assignment for **hearings of Motion for Preliminary Examination (PDO), Supplemental Request and Motion for Discovery Disclosure and Inspection, Motion to Quash Bill of Information (Pro Se), Motion for Preliminary Hearing (Pro Se), Motion to Suppress Statement and Motion to Suppress Evidence**, on motion of the Defense, Court ordered for this matter be continued to **NOVEMBER 4, 2013.**

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

Monday, November 4, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E"; BRUCE DEARING AND NICK NOREIA, ASSISTANT DISTRICT ATTORNEYS; RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiffs, Paul Tullier and Jonathan Rogers; Court Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN

The defendant not being present in open Court represented by his Counsel, Amanda Trosclair and this matter being on assignment for **hearing of Motion for Preliminary Examination (PDO), Supplemental Request and Motion for Discovery Disclosure and Inspection, Motion to Quash Bill of Information (Pro Se), Motion for Preliminary Hearing (Pro Se) , Motion to Suppress Statement and Motion to Suppress Evidence,** Court ordered for this matter be continued to the trial.

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

Monday, August 5, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT,  PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E", BRUCE DEARING, ASSISTANT DISTRICT ATTORNEY,  RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT.   (Bailiff, Darryl Terrell and Court Reporter, Theresa Trapani)

519994            STATE OF LOUISIANA
                  VS
                  KEEFER LAMAR EAGLIN

      The defendant not being present in open Court but represented by his Counsel, Amanda Trosclair and this matter being on assignment for hearing of Motion to Set Bail, after discussion with the State, Court set the defendant's bond at $500,000.00 cash, property or surety with a no code six provision.

      Also, this matter being on assignment for hearing of Motion to Quash Bill of Information (Pro Se), Motion for Preliminary Examination and Supplemental Motion for Discovery, no action taken on these motions, Court ordered for these matters be continued to AUGUST 19, 2013.

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

3-H

Monday, November 18, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND
PRESIDING HIS HONOR, SCOTT GARDNER, JUDGE, DIVISION "G", BRUCE
DEARING, DISTRICT ATTORNEY; RODNEY J STRAIN, JR., SHERIFF AND
MALISE PRIETO, CLERK OF COURT. (Angel Kane, Court Reporter; and Steve
Bircher and Johnathan Rogers, Bailiffs)

519994          STATE OF LOUISIANA
                        VS
                KEEFER LAMAR EAGLIN

    The defendant being present attended by his Counsel, OLIVER CARRIER and
AMANDA TROSCLAIR, and this case having been transferred from the Division "E"
docket. Court at this time advised the defendant of the transfer; whereupon, the
defendant is satisfied and has no opposition to the matter being heard in Division "G".

    This matter being on assignment for Felony Jury Trial and hearing of motions, the
State at this time proceeded with the Motion to Suppress Statement and Motion to
Suppress Evidence. Evidence was heard on behalf of the State with the following named
person being sworn to testify:

        1)      Brian O'Cull

    The State at this time offered, introduced and filed into evidence the following items:

        S1-     search warrant (body of Keefer Eaglin)
        S2-     miranda rights form January 19, 2012

    Evidence was heard on behalf of the State with the following named person being
sworn to testify:

        2.      Alvin Hotard

    The State at this time offered, introduced and filed into evidence the following items:

        S3-     arrest warrant Keefer Eaglin January 17, 2012
        S4-     miranda rights Keefer Eaglin January 17, 2012
        S5-     search warrant 1326 Hickory Street, Slide, LA 70460 January 17, 2013
        S6-     search warrant 1326 Hickory Street, Slidell, LA 70460 January 26, 2013
        S7-     search warrant 2000 Vision Laptop Computer February 1, 2013
        S8-     search warrant black Compaq Presario CQ57 computer February 1, 2013
        S9-     search warrant black I-Phone 4G ID # BCG-E2422A February 1, 2013
        S10-    search warrant black and blue Sanyo mobile phone February 1, 2013
        S11-    search warrant white XBOX 360 February 1, 2013

    The State rested and the Defense informed the Court they were not calling any
witnesses. The Defense Counsel offered, introduced and filed into evidence the
following item:

        D1-     Assertion of Fifth and Sixth Amendment Rights appointment of Counsel

    Court considered the testimony and evidence and finds probable cause and denied both
the Motion to Suppress Evidence and the Motion to Suppress Statement. Defense
Counsel objected to the Court's ruling.

    This matter being on assignment for hearing of a Motion for Bill of Particulars and
Discovery filed by the defendant. Defense Counsel at this time informed the Court they

are satisfied with the open file discovery that has been provided.

This matter being on assignment for hearing of a State's Motion for Discovery, Defense Counsel advised the Court that there is no discovery to provide at this time but understands his ongoing obligation if something should arise; whereupon, Court deemed said matter satisfied.

This matter being on assignment for hearing of a Motion to Quash the Bill of Information filed by the defendant, the Defense submitted and argument was heard on behalf of the State; whereupon, Court denied said motion. Defense Counsel objected to the Court's ruling.

This matter being on assignment for hearing of a Supplemental Request and Motion for Discovery Disclosure and Inspection, Defense Counsel at this time informed the Court they are satisfied with the open file discovery that has been provided.

This matter being on assignment for hearing of a Motion for Reduction of Bond filed by the defendant, Defense at this time withdrew said motion.

The State, at this time filed a Notice, Motion and Order Pursuant to R.S. 15:501; Court reserved any ruling to the extent any certificate of analysis are provided.

Court ordered the Jury Coordinator to randomly select the names of 48 prospective jurors to report to the Courtroom for voir dire examination on November 19, 2013 at 9:00 a.m.

Court ordered Counsel to report back for trial on November 19, 2013 at 8:45 a.m.

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

3-Ia

4A)

Keefer  Eaglin    519994

| | |
|---|---|
| 7/24/2012 - | John Hogue   (701 Ref. Cont to 8/6/12) |
| 8/6/2012 - | John Hogue   Arra |
| 9/24/2012 | John Hogue   J.T. |
| 11/28/2012 | Kathryn Fernandez  (mot. + P.T.) |
| 12/12/2012 | Kathryn Fernandez  ( J.T.) |
| 1/10/2013 | Kathryn Fernandez  ( Mot. + P.T) |
| 2/14/2013 | Kathryn Fernaddez - (mot.) |
| 2/28/2013 | Kathryn Fernandez  (J.T.) |
| 4/9/2013 | Kathryn Fernandez  (Mot. + P.T) |
| 4/22/2013 | Kathryn Fernandez  (J.T + mot.) |
| 6/10/2013 | Milton Masinter  (Mot.) |
| 6/17/2013 | Milton Masinter  (J.T + Mot.) |
| 7/15/2013 | Milton Masinter  (J.T. Mot.) |
| 8/5/2013 | Amanda Trosclair  (mot.) |
| 8/22/2013 | Amanda Trosclair  (J.T. Mot) |
| 9/9/2013 | Amanda Trosclair  (Mot.) |
| 9/25/2013 | Amanda Trosclair  (J.T. Mot) |
| 11/4/2013 | Amanda Trusclair  (Mot) |
| 11/15/2013 | Oliviere  Carriere + Amanda Trosclair  (Mot.) |
| 11/15/2013 Transferred board | Oliver Carriere + Amanda Trosclair  J.T. + Mot. |
| 11/18/2013 | Oliver Carriere + Amanda Trosclair (J.T.) |
| 11/20/2013 | Oliver Carriere + Amanda Trusclair (J.T.) |
| 11/21/2013 | Oliver Carrier + Amanda Trosclair (J.T.) |
| 1/3/2014 | Oliver Carriere + Amanda Trosclair (P.v.J mot. hearing) |
| 2/15/2014 | Oliver Carriere + Amanda Trosclair  Mot (mot. P.v.) |
| 3/28/2014 | Oliver Carriere + - Sentencing  Mul Off. |

4A

4-A

STATE OF LOUISIANA          NUMBER: 619994

VERSUS                      22ND JUDICIAL DISTRICT CO

KEEFER ENGLIN               PARISH OF ST TAMMANY

November 08, 2012
Filed:                          Deputy Clerk

## MOTION FOR PRELIMINARY HEARING

NOW INTO COURT COMES. Keefer Englin, in propria persona respectfully moving
the Court conducts a preliminary hearing into the probable cause for the pending criminal
matters according to the Louisiana Constitution and Code of Criminal Procedure.
Respectfully,

Dated:

Keefer Englin

### ORDER

Having been presented there with the Preliminary Hearing is set for the ____ day of
_____, ____ 20 ____, at 9:30 a.m. in the Justice Center Covington Louisiana, The
defendant shall be present and ready to proceed.

Done this ____ day of _____, 20____, Justice Center Covington Louisiana,

_____
Judge 22nd Judicial District Court

Please serve:

Keefer Englin

4-B

Friday, November 15, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT,  PRESENT AND
PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E"; BRUCE
DEARING, ASSISTANT DISTRICT ATTORNEYS; RODNEY J. STRAIN, JR.,
SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiffs, Paul Tullier; Court
Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN

        The defendant being present in open Court attended by his Counsel, Oliver
Carriere and Amanda Trosclair and this matter came on assignment for Ruling from the
First Circuit Court on the defendant's Motion for Preliminary Hearing and Motion for
Preliminary Hearing filed by the Office of Indigent Defender.  The Defense Counsel at
this time informed the Court that he has no witnesses and both the State and Defense
stated that they did not know about this proceeding until Wednesday, November 13,
2013.   Court also informed the parties that he neither knew about the First Circuits
Court's Ruling until Wednesday, but is ready to proceed with the hearing.

        The State attempted to introduce the Affidavit and Order for the Defendant's arrest
and the transcript of the said victim's statement and which the Defense objects to the
introduction until the item has been authenticated and the State responded to the Defense's
objections.

        Court took a brief recess.

        The defendant being present in open Court attended by his Counsel, Oliver
Carriere and Amanda Trosclair and evidence was heard on behalf of the State with the
following witness giving testimony:

        1     Robert Welch

Evidence was offered, filed and introduced into evidence the following items:

        1     Affidavit and Order for the defendant's arrest

        2     Transcript of the victim's statement

        The Defense objects to said  introduction of both items and renewed his previous
reasons for the record;  whereupon, Court will allow S1 be introduced as evidence.

        The State at this time withdraw S2 as evidence.

Tuesday, April 9, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E", BRUCE DEARING AND NICK NOREIA, ASSISTANT DISTRICT ATTORNEY, RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiff, Lee McCrory and Court Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN

The defendant not being present in open Court but represented by his Counsel, Kathryn Fernandez and this matter being on assignment for hearing of Motion for Preliminary Hearing (Pro Se) and Motion for Bill of Particulars and Discovery (Pro Se), on motion of the Defense, Court ordered for these matters be continued to the date of trial.

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

4-D

Monday, April 22, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E", BRUCE DEARING, DISTRICT ATTORNEY, RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiff, Lee McCrory and Suzanne Melara and Court Reporter, Theresa Trapani)

519994            STATE OF LOUISIANA
                  VS
                  KEEFER LAMAR EAGLIN

        The defendant being present in open Court attended by his Counsel, Kathryn Fernandez and this matter being on assignment for Felony Jury Trial and hearing of Motion for Preliminary Hearing (Pro Se), Motion for Bill of Particulars and Discovery (Pro Se), and States Motion for Discovery, on written motion of the Defense, Court ordered for this matter be continued to JUNE 17, 2013.

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

4-E

Monday, June 10, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E", BRUCE DEARING, ASSISTANT DISTRICT ATTORNEYS, RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT.   (Bailiff, Jason Broussard and Court Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN


        The defendant not being present in open Court but represented by his Counsel, Milton Masinter and this matter being on assignment for **hearing of Motion for Preliminary Examination (PDO) and Supplemental Request and Motion for Discovery Disclosure and Inspection**, no action taken on these motions, Court ordered for these matters be continued to <u>JUNE 17, 2013.</u>


A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Sew*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

Monday, June 17, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E", BRUCE DEARING, ASSISTANT DISTRICT ATTORNEYS, RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT.   (Bailiff, Lee McCrory and Court Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN

    The defendant not being present in open Court but represented by his Counsel, Milton Masinter and this matter being on assignment for Felony Jury Trial and hearings of Motion for Preliminary Hearing (Pro Se), Motion for Bill of Particulars and Discovery (Pro Se) and States Motion for Discovery, Court ordered for these matters be continued to JULY 15, 2013.

    Further, this matter being on assignment for hearing of Motion for Preliminary Examination (PDO) and Supplemental Request and Motion for Discovery Disclosure and Inspection, Court ordered for these matters be continued to JULY 1, 2013.

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Lea*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

Monday, September 9, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E"; BRUCE DEARING AND NICK NOREIA, ASSISTANT DISTRICT ATTORNEYS; RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiffs, Paul Tullier; Court Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN

The defendant not being present in open Court but represented by his Counsel, Amanda Trosclair and this matter being on assignment for **hearing of Motion for Preliminary Examination (PDO), Supplemental Request and Motion for Discovery Disclosure and Inspection, Motion to Quash Bill of Information (Pro Se), Motion for Preliminary Hearing (Pro Se) , Motion to Suppress Statement and Motion to Suppress Evidence,** no action taken on these motions, Court ordered for this matter be continued to **SEPTEMBER 23, 2013.**

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Sea*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

4-H

Monday, November 4, 2013

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HIS HONOR WILLIAM J. BURRIS, JUDGE, DIVISION "E"; BRUCE DEARING AND NICK NOREIA, ASSISTANT DISTRICT ATTORNEYS; RODNEY J. STRAIN, JR., SHERIFF; MALISE PRIETO, CLERK OF COURT. (Bailiffs, Paul Tullier and Jonathan Rogers; Court Reporter, Theresa Trapani)

519994          STATE OF LOUISIANA
                VS
                KEEFER LAMAR EAGLIN

The defendant not being present in open Court represented by his Counsel, Amanda Trosclair and this matter being on assignment for hearing of **Motion for Preliminary Examination (PDO), Supplemental Request and Motion for Discovery Disclosure and Inspection, Motion to Quash Bill of Information (Pro Se), Motion for Preliminary Hearing (Pro Se) , Motion to Suppress Statement and Motion to Suppress Evidence,** Court ordered for this matter be continued to the trial.

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Marlene Seal*

DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

4-I

SUPPLEMENT - NARRATIVE CONTINUATION

| | | | Juvenile | ☐ | 1. Original |
| | | | | | 2. Supplement ☐ |

| Agency ORI Number | Agency Name | | Agency Report Number |
|---|---|---|---|
| LA0520000 | ST TAMMANY PARISH SHERIFF'S OFFICE | | 2012-000840 |
| Original Date Reported | Incident Type | | |
| 01/16/2012 | Rape-forcible | | |

## NARRATIVE CONTINUATION

After speaking with Whitmore, Detective Smith conducted an interview Trevon Eaglin, Keefer Eaglin's thirteen year old son.  From the interview Detective Smith learned that T. Eaglin was present at the residence during the time the incident took place, however he was in his room with the door closed.  Upon waking he stayed in his room and played video games until sometime in the afternoon.  At no time did he see his father or anyone else in the residence.

While the aforementioned scene investigation was being conducted, Detective Hotard arrived at the Slidell Law Enforcement Complex and conducted an interview with Eaglin, who had been transported.

Before Beginning the interview, Detective Hotard advised Eaglin of his rights per Miranda, as well as, his waiver of rights.  Detective Hotard then allowed Eaglin to read the form, and Eaglin subsequently signed his name in both places.  At that time Detective Hotard began the interview and learned the following information:

Eaglin advised that he met "Bella" through a website called "Tagged" and according to her profile she was nineteen years old. Upon meeting each other they chatted online for three or four days until Sunday, January 15, 2012 when they spoke over the phone. Eaglin advised during the conversation they planned to meet at Eaglin's residence the following day (Monday, January 16, 2012) and Ben advised she would drive there. Eaglin further advised that sometime in the morning on Monday, January 16, 2012, Ben arrived at his residence in a cab, which he was forced to pay for because Ben had no money. Upon seeing Ben, Eaglin asked her to see some identification, because he thought she looked younger than what she represented. When Ben could not provide any identification, Eaglin did not want her into his car because he was going to take her back home. Ben advised she was staying in New Orleans and living with others on interstate 10. Eaglin advised Ben he stopped at a gas station and during that time Ben transported but he did not know where Ben and off on Eaglin then drove her back home. Eaglin advised that at no time did he and Ben ever engage in any type of inappropriate or sexual activities.

Upon concluding the interview, Detective Hotard completed the proper booking paperwork and Eaglin was subsequently transported to criminal patrol deputies to the Saint Tammany Parish Jail where he was booked accordingly.

On Thursday January 19, 2012 at approximately 10:51 am, Sergeant Brian O'Cull presented before Judge William Knight of the 22nd Judicial Court an affidavit for a

## ADMINISTRATIVE

| Report Contains | | | Related Report Number(s) | | | |
|---|---|---|---|---|---|---|

| Officer(s) Reporting | ID. Number | Name | | ID. Number | Unit | Date |
|---|---|---|---|---|---|---|
| HOTARD, ALVIN A. | 1683 | | | | 7113 | 02/15/2012 |

| Officer Reviewing (if Applicable) | ID. Number | Approved Date | # Offenses | # Victims | # Offenders | # Premises Ent. | # Vehicles Stolen | # Arrested |
|---|---|---|---|---|---|---|---|---|
| | | | 0 | 0 | 0 | 0 | 0 | 0 |

| Routed To | | Referred To | |
|---|---|---|---|
| MAJOR CRIMES | | | |
| Assigned To | | By | Assigned Date |
| | | | |
| Case Status | | Exception Type | Date Cleared |
| CLEARED BY ARREST | | | |

## NARRATIVE

ON 01-10-12, APPROXIMATELY 9:45 AM, THE REPORTING PERSON, MS. EDNA BEN, REPORTED HER DAUGHTER, CHANEL BEN, BF, 09/07/1996 MISSING OR AS A RUNAWAY. THE REPORT WAS TAKEN BY PO OFFICER D. BANKS, UNIT 421.

ON 01-16-12, APPROXIMATELY 12:15 PM, CHANEL BEN CALLED HER SISTER AND INFORMED HER THAT SHE WAS KIDNAPPED AND SHE ESCAPED FROM THE MEN WHO KIDNAPPED HER. SHE ALSO TOLD HER SISTER THAT SHE WAS AT A HOTEL AT 7001 BULLARD AVE. CHANEL BEN'S SISTER APPARENTLY NOTIFIED POLICE WHO IN TURN PUT THE CALL OUT FOR 7TH DISTRICT OFFICERS TO RESPOND TO. LT. GERVAIS, UNIT 730A AND DETECTIVE POWELL, UNIT 1711 RESPONDED TO 7001 BULLARD AND LOCATED CHANEL BEN. CHANEL BEN INFORMED THE OFFICERS THAT ON 01-16-12, APPROXIMATELY 7:30 AM, SHE WENT OUTSIDE AS USUAL AND FOUND AN UNKNOWN BAG ON THE FRONT PORCH BEHIND THE FLOWER POT. CHANEL WENT ON TO SAY SHE ATTEMPTED TO OPEN THE PORCH DOOR WITH THE BAG IN HER HAND BUT THE DOOR WAS STUCK. CHANEL THEN SAID AT THAT TIME, THREE MASK MEN RAN UP TO THE PORCH, OPENED THE DOOR AND FORCED HER IN AN UNKNOWN RED CAR, PUT SOMETHING OVER HER HEAD AND DROVE HER TO AN UNKNOWN LOCATION. CHANEL STATED AFTER A WHILE, SHE WAS ABLE TO ESCAPE FROM HER CAPTURES AND RUN TO THE HOTEL AT 7001 BULLARD AVENUE WHERE THE POLICE PICKED HER UP.

OFFICERS NOTIFIED THE 4TH DISTRICT THAT THE 21J, MISSING PERSON/RUNAWAY, HAD BEEN LOCATED. OFFICERS RELOCATED MS. CHANEL BEN TO THE SEVENTH DISTRICT STATION TO BE REUNITED WITH HER MOTHER, MS. EDNA BEN AND OTHER FAMILY MEMBERS. CHANEL'S FAMILY MEMBERS BEGAN TO SEARCH HER CELL PHONE AND LEARNED THAT SHE CALLED A UNITED CAB FROM HER CELL PHONE APPROXIMATELY 7:45 AM. DETECTIVE POWELL CALLED THE CAB COMPANY, 522-9771, AND LEARNED THAT CAB NO. 146, MR. ELLIOTT FLOOD, PICKED UP A FARE AT CHANEL'S RESIDENCE AT 3601 LENNOX BLVD. DETECTIVE POWELL INTERVIEWED MR. FLOOD WHO STATED HE PICKED UP A YOUNG LADY FROM 3601 LENNOX BLVD. MR. FLOOD SAID THE YOUNG LADY WENT ON TO SAY THAT SHE WAS GOING TO 1326 HICKORY STREET, SLIDELL, LA., AND INFORMED HIM THAT SHE WAS WORKED AT DILLARD UNIVERSITY AND SHE WORKED AT THE OAKWOOD MALL. MR. FLOOD SAID HE PULLED UP TO A BLUE HOUSE ON A SHORT STREET OFF OF SOUTH STREET. HE ASKED THE YOUNG LADY WHO SHE WAS INTENDING TO PAY FOR THE FARE, WHICH WAS $85.00. MR. FLOOD SAID THE YOUNG LADY SAID SHE WAS GOING TO PAY BY CREDIT CARD AND HE ASKED HER FOR HER IDENTIFICATION. MR. FLOOD SAID THE YOUNG LADY WAS ALREADY TALKING TO SOMEONE ON THE PHONE AND HE HEARD THE YOUNG LADY ASK THE PERSON ON THE PHONE IF THEY WERE GOING TO PAY FOR THE CAB FARE. MR. FLOOD SAID A FEW MINUTES LATER, A MAN APPROACHED THE CAB, PAYED HIM $85.00 IN CASH AND THE YOUNG LADY GOT OUT OF THE CAB AND HE PULLED OFF.

DETECTIVE POWELL REINTERVIEWED MS. CHANEL AND HER MOTHER AND INFORMED THEM THAT HE HAD JUST INTERVIEWED THE CAB DRIVER AND INFORMED CHANEL WHAT THE CAB DRIVER SAID. MS. CHANEL BEGAN TO CRY AGAIN, THIN ADMITTED THAT SHE HAD CAUGHT THE CAB TO A MAN'S HOUSE AT 1326 HICKORY ST. IN SLIDELL AND SHE SAID THEY DID NOT DO ANYTHING. AFTER SEVERAL MINUTES OF TALKING TO CHANEL, CHANEL ADMITTED TO HER MOTHER AND EDNA BEN THAT SHE DID HAVE SEX WITH THE MAN, WHO SHE DID NOT OR WOULD NOT IDENTIFY, AND THAT THE MAN HAD UNPROTECTED SEX WITH HER THEN BROUGHT HER BACK TO NEW ORLEANS AND DROPPED HER OFF ON BULLARD AVENUE.

DETECTIVE POWELL INFORMED MS. EDNA BEN TO TAKE HER DAUGHTER TO CHILDREN'S HOSPITAL AND DETECTIVE POWELL NOTIFIED SEX CRIMES UNIT 4553, DETECTIVE COREY JENKINS, WHO STATED TO DOA SUPPLEMENTAL AND NOTIFY ST. TAMMANY PARISH'S SEX CRIMES UNIT.

ANY ADDITIONAL INFORMATION WILL FOLLOW IN A SUPPLEMENTAL REPORT.

4-K

August 5, 2010

Re:   Keefer Eaglin
DOB:  10/12/1979

Dear Mr. Eaglin,

Per request of your wife, this letter is a summary of your visit dated July 14, 2010.

Mr. Eaglin is a 30 year old black male who presented with a sudden onset of things appearing red in the right eye. The symptoms began suddenly on the afternoon of the day before presentation, and this was accompanied by painless blurred vision. He denies any previous episodes.

Past medical history is significant for juvenile-onset diabetes since age 6. He reported that he was followed by Dr. Nix in Opelousas until recently moving to the Slidell area. He reported his last hemoglobin A1c was around 7. He denies any prior eye trauma or surgery. He does not wear glasses. He had not had an eye exam within the past several years, despite recommendations by Dr. Nix. Medication includes insulin. There are no known drug allergies. Social history is positive for tobacco. He does drive, and works as a manager at Burger King. He denies alcohol or illicit drugs. Review of systems was positive for left lower leg edema and recent cellulitis. The review of systems was otherwise negative.

On exam, uncorrected visual acuity was 20/400 in the right eye, 20/200 in the left. Cycloplegic refraction revealed best corrected visual acuity of 20/200 in the right eye, 20/30 in the left. Pupils were unequal but round and reactive to light, with no afferent pupil defect noted. Motility was full. Applanation tonometry was 12 in the right eye, 13 in the left. Slit lamp examination of the anterior

---

Ochsner Health System, a part of Ochsner Clinic Foundation

2750 Gause Blvd • Slidell, LA 70461 • phone 985-639-3777 • fax 985-639-3725 • www.ochsner.org


**Ochsner**™
Health System

segment was within normal limits, with clear corneas, deep and quiet anterior chambers, and no iris neovascularization. Dilated fundus examination revealed a large pre-retinal hemorrhage covering the macula in the right eye. Severe proliferative retinopathy was noted in both eyes, with early fibrosis seen nasally in the right eye. Optic nerves appeared normal, with no neovascularization and a normal cup-to-disc ratio of 0.3 bilaterally.

Mr. Eaglin was informed of the need for prompt evaluation and treatment by a retina specialist. My staff offered to set him up with an appointment at a charity clinic in either New Orleans or Houma. Mr. Eaglin responded that he had insurance and that he did not have the information with him. He was asked to bring this information to my office as soon as possible so that an appointment could be made with an Ochsner retina specialist. He did not bring this information, and my staff was unable to reach him. I called him on Friday, July 23, 2010 and he told me that he did not have insurance. I reiterated the importance of prompt follow up by a retina specialist for treatment. Phone numbers were provided for the charity clinics in New Orleans and Houma.

Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Wendy Doneyhue, M.D.

Ochsner Health System, a part of Ochsner Clinic Foundation

2750 Gause Blvd • Slidell, LA 70461 • phone 985-639-3777 • fax 985-639-3725 • www.ochsner.org

Bogalusa Medical Center

## OUTPATIENT CLINIC VISIT RECORD

| | | | | |
|---|---|---|---|---|
| KEFFER FEA | 27 | DOB 10/12/1979 | ACMDT 09/30/10 | |
| 80901 | HORTMAN RICH | FC 1 | | |
| MR# 000158648 | PT# | 2174515 | | |

CLINIC _____ ☐ Two Identifiers Used  Age 30  Date 9/30/10  Chart No. _____

**MODE OF ARRIVAL**
- ☐ Ambulatory
- ☐ Wheelchair
- ☐ Other

**ALLERGIES**  LATEX: ☐ YES ☐ NO
Med: _____  Other: _____  NKD

Medication Record Reconciled ☐ Yes ☐ No ☐ Did not bring Meds

MEDICATION RECORD RECONCILED ☐ YES ☐ NO ☐ DID NOT BRING MEDS

| TEMP | PULSE | RESP | B/P | WEIGHT | HEIGHT | BMI | FOOT AC | PULSE OX | ACCU | PAIN |
|---|---|---|---|---|---|---|---|---|---|---|
| 98 | 114 | 18 | 164/111 | 132 | 64 | 22.7 | 91 | | | |

PAIN: Scale ___ Location ___ Type ___ Duration ___ Onset ___ Relief ___

**GYN** Birth Control ___ Gravida ___ Para ___ Ab ___ LMP ___ TAH ___ BSO ___ ☐ Post menopause

**NUTRITION** ☐ Unintentional Weight Loss > 10# in last month  ☐ Unintentional Weight Gain > 10# in last month
Special Diet: _____  If Yes, diet teaching in last year: ☐ YES ☐ NO  Appetite: ☐ Good ☐ Fair ☐ Poor

**FUNCTIONAL** ☐ Ambulatory ☐ Performs ADL's Independently ☐ Walker/Cane/Prosthesis ☐ Wheelchair ☐ Bedridden
☐ Home O2 ☐ HH ☐ Hospice ☐ Agency ☐ Other

**ABUSE** ☐ None ☐ Complaint ☐ Suspected  If YES, referred to: _____

**LIMITATIONS / BARRIERS**
☐ None
- ☐ Reading/Comprehension/Low Literacy
- ☐ Cultural/Religious Practices ☐ Psychological ☐ Financial Implications ☐ Language Preference
- ☐ Physical/Cognitive ☐ Hearing ☐ Vision ☐ Motivation ☐ Other ☐ Needs Interpreter

**SOCIAL** Tobacco Use: ☐ Yes ☐ No  2nd Hand Smoke Exposure: ☐ Yes ☐ No  Other _____
Illegal Drug Use: ☐ Yes ☐ No  ETOH Use: ☐ Yes ☐ No  Other _____

**SCREEN**

| FEMALE | | MALE | | IMMUNIZATIONS | |
|---|---|---|---|---|---|
| 18-39 Yearly Pap Last Ex. _/_/_ | 50+ Yearly Pap70 Last Ex. _/_/_ | 40-49 Yearly PSA Last Ex. _/_/_ | ☐ Flu | ☐ T dap |
| 40-49 Yearly Pap Last Ex. _/_/_ | 60+ Mammo yearly Last Ex. _/_/_ | 50+ Yearly PSA Last Ex. _/_/_ | ☐ Pneumonia | ☐ Hep |
| 40-49 Mammo 02 yrs Last Ex. _/_/_ | 50+ Colonoscopy Last Ex. _/_/_ | 50+ Colonoscopy Last Ex. _/_/_ | ☐ Shingles | |

**NURSES NOTES** 14 y/o white DM. Pt has cellulitis to ___ foot since 6/24/10 states blind in ___ eye

SP 170/102

Nurse Signature _____ Date 9/30/10 Time 3:30

## DISEASE MANAGEMENT ORDERS

| DIABETES | ASTHMA | CHF |
|---|---|---|
| ☐ Check your feet regularly and report any changes | ☐ ACE/ARB: | *Follow your action plan | *Call your doctor if you have 3-5 lbs |
| ☐ Monitor your blood sugar at home | ☐ Contradictions: | ☐ Education Referral | of weight gain within one week |
| ☐ Education Referral | | ☐ Clinic | ☐ Education Referral |
| ☐ Diabetic Foot Clinic - Call appointment desk | ☐ ASA ___ mg every day | ☐ Beta agonist: | ☐ Clinic |
| ☐ Foot Exam | ☐ Contradictions: | ☐ Steroid: | ☐ ACE/ARB: |
| ☐ Nutrition Referral | | ☐ Not Indicated/Intermittent | ☐ Beta Blocker: |
| ☐ Eye Exam, ☐ LSU ☐ Private | ☐ Labs Ordered | ☐ ACT Score ___ | ☐ Contraindications: |
| 6/14/10 | ☐ Procedures Ordered | ☐ Procedures Ordered | ☐ Labs Ordered |
| | | ☐ PFT | ☐ Procedures Ordered |

| HYPERTENSION | CKD | IMMUNIZATIONS | GENERAL | EDUCATION |
|---|---|---|---|---|
| ☐ Clinic: | ☐ Education Referral | ☐ Flu | *Do not smoke or use tobacco products | Learns Best: ☐ Visual ☐ Hearing |
| ☐ (BP > 130/85 X 3 visits) | ☐ Basic | ☐ Pneumonia | *Avoid excessive alcohol/illegal drug use | ☐ Reading ☐ Doing |
| ☐ Labs Ordered | ☐ Advanced | ☐ Shingles | ☐ Nutritional Referral | Plan: ☐ Read to Patient ☐ Interpreter |
| ☐ Procedure Ordered | ☐ Clinic | ☐ Tdap | BMI ☐ < 18.5 ☐ > 30 | ☐ Audio Visual ☐ Sign Language |
| **CANCER SCREENING** | ☐ Labs Ordered | ☐ Hep B | ☐ Special Diet: | ☐ Instruct/Demo |
| ☐ Mammogram ☐ PSA | ☐ Procedures Ordered | ☐ Other: | ☐ Exercise as tolerated/instructed by your doctor | ☐ Family Member Assist |
| ☐ Colonoscopy ☐ PAP | | | ☐ Wound Clinic | |

**RETURN APPOINTMENTS AND REFERRALS**

Method of teaching: ☐ Explanation ☐ Demonstration ☐ Audio Visual ☐ Handout _____ ☐ POC
Response to teaching: ☐ Return Demonstration ☐ Verbalization ☐ Additional Instructions Required
Comments _____

If further treatment is required prior to scheduled appointment, call your doctor's office or report to the nearest Emergency Room. Take all medications as prescribed and report all reactions (Side Effects) to my Physician. I have reviewed and understand the above instructions with the Physician and/or the nurse and I have received a copy.

Signature of Patient or Responsible Party _____ Relationship (if other than patient) _____ Discharge Nurse's Signature _____ Time 14:30

WHITE COPY - CHART    YELLOW COPY - MEDICAL RECORD    PINK COPY - PATIENT

EAGLIN ,KEEFER L
2/ M DOB 10/12/1979   ADMDT 07/12/11
57227  OSULLIVAN PA   FC B
MR# 000158548 PT#   2302217

 **Health Sciences Center**

Patient Consent to Medical Treatment or Surgical Procedure and
Acknowledgement of Receipt of Medical Information
## General Angiography

**READ THIS DOCUMENT CAREFULLY BEFORE SIGNING**
TO THE PATIENT:
- You have been told that you should consider medical treatment/surgery. Louisiana law requires us to tell you
  - The nature of your condition
  - The general nature of the medical treatment /surgery
  - The risks of the proposed treatment/surgery, as defined by the Louisiana Medical Disclosure Panel or as determined by your doctor, and
  - Reasonable therapeutic alternatives and material risks associated with such alternatives.
- You have the right, as a patient, to be informed about your condition and the recommended surgical, medical or diagnostic procedure to be used so that you may make the decision whether or not to undergo the procedure after knowing the risks and hazards involved.
- In keeping with the Louisiana law of informed consent, you are being asked to sign a confirmation that we have discussed all these matters. We have already discussed with you the common problems and risks. We wish to inform you as completely as possible. Please read the form carefully. Ask about anything you do not understand and we will be happy to explain it.

1. **Patient Name:**

2. **Treatment/Procedure:** General Angiography

   a) <u>Description, nature of the treatment/procedure:</u>
   ☐ Left   ☐ Right   Flouroscein angiography of the eye

- b) Purpose:  to image circulation in the eye

3. **Patient Condition**
- Patient's diagnosis, description of the nature of the condition or ailment for which the medical treatment, surgical procedure or other therapy described in item number 2 is indicated and recommended:

   retinal lesion

4. **Material Risks of Treatment/Procedure**
   a) All medical or surgical treatment involves risks. Listed below are those risks associated with this procedure that we believe a reasonable person in your (the patient's) position would likely consider significant when deciding whether to have or forego the proposed therapy. Please ask your physician if you would like additional information regarding the nature or consequences of these risks, their likelihood of occurrence, or other associated risks that you might consider significant but may not be listed below.

HCSD 6010 CAR (Rev 2/04)

Page 1 of 3

4-0